MURIEL VOGT, APPELLANT AND CROSS-APPELLEE, v. TOWN AND COUNTRY REALTY OF LINCOLN, INC. ET AL., APPELLEES AND CROSS-APPELLANTS.

231 N. W. 2d 496

Filed July 17, 1975. No. 39688.

Christensen & Glynn, for appellant.

Barney & Carter, for appellees.

Heard before SPENCER, NEWTON, CLINTON, and BRODKEY, JJ., and WARREN, District Judge.

WARREN, District Judge.

This is an action brought by plaintiff Muriel Vogt in the District Court for Lancaster County against the defendants Town & Country Realty of Lincoln, Inc., one of its real estate brokers Stanley Portsche, and Gerald F. Gulland and his wife Peggy A. Gulland, purchasers, to recover damages for fraud arising out of a 1971 real estate transaction in which plaintiff sold a Lincoln residence to defendants Gulland while defendant Portsche was purporting to act as the plaintiff's agent and broker, and while the defendant Gerald F. Gulland was a fellow officer, stockholder, and broker with Portsche in Town & Country Realty of Lincoln, Inc. For convenience, the defendant Town & Country Realty of Lincoln, Inc., will be hereinafter referred to as Town & Country.

The trial court found that defendants Town & Country and Stanley Portsche breached their fiduciary duties owed plaintiff in material respects; ordered them to refund the real estate commission of $810; and entered judgment against all defendants for additional damages of $2,500. Plaintiff appealed, contending that damages were inadequate. Defendants cross-appealed from the findings of the trial court with respect to both breach of fiduciary duties and the damages assessed. We affirm.

In early February 1971, plaintiff was contacted by phone at her home in Omaha by defendant Portsche, who inquired whether she had considered selling her house at 1728 South 26th Street, in Lincoln. He explained he was a representative of Town & Country, that he had someone interested in looking at the property, and that his firm would like to list her property if she decided to sell. Plaintiff replied that she had not yet decided to sell, but gave Portsche permission to call her again. A week later, Portsche called plaintiff a second time and plaintiff advised him she had decided to sell the house. Asked what he could get for it, Portsche said $12,500. Plaintiff argued that this was not sufficient, extolled the virtues of the home, and when

Portsche said that in that case maybe she could get $13,500, plaintiff told him she would list it with Portsche at that price. Plaintiff advised him she was doing redecorating work inside, and Portsche advised her not to do contemplated exterior painting and reroofing because she would not realize any more for the property as a result. Portsche was to call back as to when the house could be inspected. Plaintiff continued to do interior painting, plastering, and varnishing on weekends at the then unoccupied home, and after three further calls from Portsche agreed she would complete her work and show the property the following weekend to his interested party, whose identity had not been divulged to her by Portsche.

On Saturday, March 20, 1971, defendant Portsche and the defendants Gulland arrived at the home where plaintiff was still working. Gullands were introduced by name as the interested parties, but no mention was made of Gerald F. Gulland's capacity as a real estate broker or his connection with Town & Country. The parties inspected the home and left. The following Monday evening defendant Portsche visited plaintiff in Omaha, bearing a signed written offer from the defendants Gulland to purchase the property for $12,500. Portsche then went through a previously prepared handwritten "Seller's Closing Statement" itemizing the various expenses of sale, the mortgage balance of $6,800, and showing that plaintiff would net $4,480. The expenses so itemized included an item designated "Commission 6% $750.00." Plaintiff objected to the price, after which Portsche changed the various figures on his seller's closing statement to reflect a $13,500 selling price, an $810 commission, and a net of $5,400 to plaintiff. Portsche then changed the figures on the Gulland's offer to purchase to $13,500, had plaintiff initial the change and sign the acceptance of the offer, and informed plaintiff that he would go back to Gullands and see if they would accept the change to $13,500. A day or two later, Portsche

phoned plaintiff to advise that Gullands had accepted her counteroffer and to state that he would be down to have her sign some things including the listing agreement which he had forgotten to have her sign on the previous visit.

On March 22, 1971, or thereabouts, plaintiff received a copy of the completed contract, with the changes initialled by defendants Gulland, showing a $500 downpayment check deposited with Town & Country to be held until closing. Portsche had plaintiff sign a "Uniform Listing Contract" giving defendant Town & Country a 30-day exclusive listing of her home at a $13,500 figure, in which she agreed to pay Town & Country a 6 percent commission for professional service "In consideration of your agreement to list and offer for sale the property hereafter described, and to use your efforts to find a purchaser therefor."

The defendants Gulland took possession of the property on April 1, 1971, began making extensive repairs and improvements, moved in on May 1, 1971, and closing was had on June 1, 1971, with the commission of $810 being paid by plaintiff to Town & Country.

In March 1973, plaintiff learned that her former residence was being offered for sale by Town & Country for $31,500. On further investigation she found that it was sold by Gullands to a third party for $28,500; and that Gerald F. Gulland was one of the original incorporators of Town & Country, and was during 1971 the owner of one-seventh of its corporate stock, a licensed real estate broker, and acting as an officer of the firm. She thereupon commenced this action, claiming fraud in the 1971 transaction and praying for damages including return of the commission and imposition of a constructive trust on the $28,500 sale proceeds whereby she would receive the $15,000 excess over her selling price to Gullands.

The defendant Stanley Portsche did not testify in his own defense, and the defendant Gerald F. Gulland took

the stand to testify only with respect to improvements he and his wife made in the property after April 1, 1971. The contentions of the defendants as to their actions can only be gleaned from portions of their discovery depositions which plaintiff offered as admissions against interest. Such testimony, insofar as it differs materially from plaintiff's, was to the effect that Portsche made only one phone call to plaintiff before the inspection of the property and he did not suggest a selling price at any time before Gulland made the written offer; that at the inspection of the house both Portsche and Gulland gave plaintiff their Town & Country business cards; that the evening of the inspection Gulland prepared and delivered to Portsche the written offer to purchase at $12,500 without first discussing price with Portsche; and that Portsche at all times believed the property to be worth only $12,000, and therefore did not advertise the property or solicit any offers other than that of the Gullands. Defendant Portsche explained his behavior by testifying in his deposition that he first learned of the property when the defendant Gerald F. Gulland told him that a house located a block down the street from Gulland's home might be for sale and asked him to look into it inasmuch as Gulland might want to buy it. Portsche testified that he was acting entirely as an agent of Gulland, whom he graphically described as "the main objective, Number 1 client," right up until the time plaintiff signed the listing agreement, and at that moment he was transformed into the plaintiff's real estate agent.

The trial court found that defendants Portsche and Town & Country breached their fiduciary duties owed the plaintiff (1) by failing to disclose the relationship between defendants Gerald F. Gulland and Town & Country; (2) by failing to solicit offers to purchase the property from prospective purchasers other than defendant Gerald F. Gulland; and (3) by listing and selling

the property to defendants Gulland at a price less than its fair and reasonable value.

The trial court further found that the principles of law laid down by this court in Schepers v. Lautenschlager, 173 Neb. 107, 112 N. W. 2d 767 (1962), controlled.

" 'The duties and liabilities of a broker to his employer are essentially those which an agent owes to his principal. A broker owes to his employer the duty of good faith and loyalty, and is required to use such skill as is necessary to accomplish the object of his employment. * * * It is also his duty to give his client the fullest information concerning his transactions and dealings in relation to the property with reference to which he is employed.' * * * 'A broker is a fiduciary required to exercise fidelity and good faith toward his principal in all matters within the scope of his employment. * * * This requirement not only forbids conduct on the part of the broker which is fraudulent or adverse to his client's interests, but also imposes upon him the positive duty of communicating all information he may possess or acquire which is, or may be, material to his employer's advantage.' * * * 'A broker cannot, without violating his general duty of good faith, act for persons having interests adverse to those of his employer, unless he acts with the consent of his employer given with full knowledge of the facts.' * * * 'The rule requiring a broker to act with the utmost good faith towards his principal places him under a legal obligation to make a full, fair, and prompt disclosure to his employer of all facts within his knowledge which are or may be material to the matter in connection with which he is employed, which might affect his principal's rights and interests or influence his action in relation to the subject matter of the employment, or which in any way pertain to the discharge of the agency which the broker has undertaken.' * * * The doctrine is well settled that an agent cannot, either directly or indirectly, have an interest in

the subject matter of the agency without the consent of his principal, freely given, after full knowledge of every matter known to the agent which might affect the principal." Schepers v. Lautenschlager, *supra.*

The relationship between a real estate broker and a property owner for whom the agent has by oral or written contract agreed to sell the owner's property is that of principal and agent. A real estate agent owes a fiduciary duty (1) to use reasonable care, skill, and diligence in procuring the greatest advantage to his client, and (2) to act honestly and in good faith, making full disclosures to his client of all material facts affecting his interests. 12 C. J. S., Brokers, §§ 23 to 57, pp. 66 to 132.

Section 81-881, R. R. S. 1943, in effect at the time of this transaction, listed as unfair trade practices the following: "(5) acting in a dual capacity of broker and undisclosed principal in any transaction; * * * (13) representing or attempting to represent a real estate broker, other than the employer, without the express knowledge or consent of the employer."

The burden of proof is upon the real estate agent to show that he satisfied the fiduciary duties he owed his principal. Allied Securities, Inc. v. Clocker, 185 Neb. 524, 176 N. W. 2d 914 (1970); Jansen v. Williams, 36 Neb. 869, 55 N. W. 279 (1893).

"The general rule is that a broker can neither purchase from, nor sell to, his principal unless the latter expressly assents thereto or, with full knowledge of all the facts and circumstances, acquiesces in such transaction. * * * In the event of any litigation between him and his employer, the burden is upon him to prove both the permission and the exemplary manner in which he availed himself of it. The reason is that it is inconsistent for one to act as principal in his own behalf while in duty bound to act as the agent of another, for in the latter capacity he is bound to exercise his best skill and labor for and a high degree of fidelity and good

faith to secure for his principal the best bargain possible, even though his own conflicting interests at the same time impel him to do just the opposite and thereby gain the most advantageous terms for himself." 12 Am. Jur. 2d, Brokers, § 91, p. 844.

Here, the evidence clearly shows that the plaintiff and defendant Portsche orally agreed at the time of the second phone call, on about February 15, 1971, that plaintiff would list her property with defendant at $13,500, and from that moment on defendant Portsche and his company, Town & Country, owed plaintiff all the fiduciary duties outlined above.

We are not unmindful that section 36-107, R. R. S. 1943, provides: "Every contract for the sale of lands between the owner thereof and any broker or agent employed to sell the same, shall be void, unless the contract is in writing and subscribed by the owner of the land and the broker or agent. Such contract shall describe the land to be sold, and set forth the compensation to be allowed by the owner in case of sale by the broker or agent." This court has previously disposed of any contention that this statutory provision can be relied upon by an agent to delay imposition of his good faith obligations to make full disclosure until the actual making of a written listing agreement. In Pearlman v. Snitzer, 112 Neb. 135, 198 N. W. 879 (1924), the court said: "That defendant was plaintiff's agent, under a verbal contract, to procure a purchaser for the property plainly appears. The relationship between the parties, even before the written contract was executed, clearly constituted an agency. That is to say, defendant obtained plaintiff's confidence and was entrusted with his business. He was authorized to act for him and in his place. It follows that he owed to his principal the utmost good faith in all that he did. * * * Before his principal signed the contract defendant withheld from him the material fact, upon inquiry, that he had already obtained a purchaser and also all knowledge of the

price which the purchaser agreed to pay. In view of the relationship between the parties this showed bad faith. And so the transaction, on defendant's part, was fraudulent from its inception."

The absurdity of the explanation given by Portsche as to his sudden transformation can be demonstrated by his actions on March 20, 1971, in detailing to plaintiff the commission he was charging her for his services, which was at a time several days before the listing agreement was signed and before he abandoned his role as agent of Gulland and donned the hat of agent for plaintiff. The fact was that Portsche was the plaintiff's agent from and after the oral agreement of February 15, 1971, and her agent alone, in the eyes of the law. Portsche made only a feeble attempt by testifying to the alleged presentation of business cards to prove disclosure of Gulland's relationship to Town & Country. He had the duty to clearly and unequivocally inform the plaintiff. The trial court was clearly correct in holding that Portsche and Town & Country breached their fiduciary duty to plaintiff by that failure to disclose.

"A commission cannot be collected by the agent for his services if he has willfully disregarded, in a material respect, an obligation which the law devolves upon him by reason of his agency." Schepers v. Lautenschlager, *supra*. The trial court was correct in decreeing a return of the commission to plaintiff.

The evidence was uncontradicted that the defendants Portsche and Town & Country made no attempt to advertise or solicit offers to purchase the property from anyone except the defendants Gulland. Defendants contend that no such duty exists where the real estate broker has an offer in excess of what the broker believes the property to be worth. It is sufficient to answer this contention to say that such belief must be in good faith and that when the only offer the broker has obtained is from his undisclosed fellow officer and stock-

holder in the listing firm, he has such a duty to solicit other offers to purchase.

The plaintiff assigns as error the failure of the District Court to expressly find that the defendant Gerald F. Gulland owed and breached a fiduciary duty to plaintiff. This assignment is without merit. The trial court entered judgment against all defendants, including Gerald F. Gulland, for the $2,500 which it found to be the difference between the fair market value of the property when sold ($16,000) and the selling price ($13,500).

"All persons who knowingly aid or participate in committing a breach of trust will be held responsible for the resulting loss, and will be held accountable by personal judgment for the value of the property so converted." Schepers v. Lautenschlager, *supra*. It is evident the trial court found that the defendant Gerald F. Gulland knowingly participated in committing the breach of trust. The evidence shows that Gulland initiated the first contact with plaintiff by Portsche, told Portsche he was interested in personally buying the property, told him to get a listing if he could in the name of their firm, failed to disclose his connection with Portsche and Town & Country, and purchased the property knowing it had not been advertised or offered to anyone else and that a commission was being paid by plaintiff to the defendant firm in which he would share as the owner of one-seventh of the corporate stock. As such, the defendant Gerald F. Gulland was not only a knowledgeable party but was a party to the entire transaction which was instigated for his benefit. The trial court correctly held Gerald F. Gulland personally liable. A stockholder and officer of a real estate brokerage firm is jointly and individually liable for a constructive fraud committed by said firm where he had knowledge of and instigated such fraud.

Constructive fraud involves a breach of a fiduciary duty and neither actual dishonesty or purpose nor intent to deceive is an essential element. Taxpayers'

League v. Wightman, 139 Neb. 212, 296 N. W. 886 (1941).

The finding of the trial court that the defendants Portsche and Town & Country listed and sold the property to the defendants Gulland at a price less than its fair and reasonable value brings us to the questions presented by the principal assignments of error of both parties. Both plaintiff and defendants contend that the District Court erred in finding the fair and reasonable market value of the property to have been $16,000 at the time of the sale to Gullands. The evidence was conflicting, and ranged from evidence that plaintiff had in March 1971 told a third person that she would "like to get twelve five out of it," to the testimony of plaintiff's expert, one Richard W. Putney, that it was worth $20,750 in March 1971. Defendants further assigned as error the receipt in evidence of the Putney opinion as to value. Richard W. Putney, a licensed real estate broker since 1965, testified that he did not see the property until November 1973, and that he never saw the inside of the house. He testified that he had reviewed the depositions of Portsche, Gulland, and the plaintiff Mrs. Vogt, photographs of the interior, the 1971 listing résumé of Town & Country, tax assessment data, and a report of the city housing inspector, and had talked to a neighbor and the present owner. His valuation was based upon six comparable sales of older homes in the same neighborhood during the first 6 months of 1971, computation of the average selling price per square foot, and application of that unit price to the square footage of plaintiff's property.

"The admissibility of expert testimony is ordinarily within the discretion of the trial court and its ruling will be upheld on appeal unless an abuse of discretion is shown." Y Motel, Inc. v. State, 193 Neb. 526, 227 N. W. 2d 869 (1975).

The opinion of a witness as to the value of land will ordinarily be received if he is familiar with the prop-

erty and its uses and is informed as to the state of the market, the weight and credibility of his testimony being for the trier of fact. DeVore v. Board of Equalization, 144 Neb. 351, 13 N. W. 2d 451 (1944).

"A party may not require * * * that a particular witness as to valuation follow or subscribe to any given formula or method of appraisal or require that certain factors affecting valuation be considered." Frank v. State, 176 Neb. 759, 127 N. W. 2d 300 (1964).

The District Court properly received the testimony of the expert witness Putney. It is evident from the finding of the court as to valuation that it did not give full weight and credibility to the $20,750 appraisal.

Plaintiff introduced evidence that when the defendants Gulland obtained a loan of $16,000 to purchase the property from plaintiff, the lending institution made an appraisal of $20,000. The effect of this testimony was lessened by evidence that very extensive improvements had been made by Gullands before the appraisal was made. Defendants offered evidence that the home had been occupied by eight persons as a "commune" in 1969 and 1970 and that the house was in a generally run-down condition. The finding of the trial court that the property had a fair and reasonable market value of $16,000 at the time of the sale to Gullands is supported by the record. We also consider the fact that the trial court saw and heard the witnesses and observed their demeanor, and give great weight to the trial court's judgment as to credibility. Donahoo v. Home of the Good Shepherd of Omaha, Inc., 193 Neb. 586, 228 N. W. 2d 287 (1975).

Plaintiff's last assignment of error is that the District Court erred in determining the measure of damages, contending that under the rule in Schepers v. Lautenschlager, *supra,* a constructive trust was created whereby plaintiff was entitled to the enhanced value of the property including improvements and any accrued profit. By this theory, defendants Gulland would hold in trust

for plaintiff's benefit the proceeds of their sale of the property on May 15, 1973, for $28,500, and plaintiff would be entitled to recover that sum, less the $13,500 received.

In Ericson v. Nebraska-Iowa Farm Investment Co., 134 Neb. 391, 278 N. W. 841 (1938), this court said: "An agent or other fiduciary who deals with the subject-matter of the agency so as to make a profit for himself will be held to account in equity as trustee for all profits and advantages acquired by him in such dealings. * * * An agent who fails to disclose to his principal every material fact in the transaction which is the subject-matter of the agency is guilty of fraud and bad faith, and may not retain anything acquired by him either in the performance or violation of his agency. * * * All persons who knowingly aid or participate in committing a breach of trust will be held responsible for the resulting loss, and will be held accountable by personal judgment for the value of the property so converted."

The rules so stated are correct, but they do not justify the result for which plaintiff contends. The trial court properly found that here additional factors were present, namely: That nearly 2 years passed before resale, that extensive intervening improvements were made by the Gullands, and that the property appreciated in value during the intervening period. In Schepers v. Lautenschlager, *supra*, the agent in effect sold to himself while having a purchaser at a higher price immediately available. His resale followed almost immediately without presale improvements. In the instant case, the evidence showed that defendants Gulland expended approximately $5,000 on improvements in the 2-year period beginning April 1, 1971, and that the Gullands in addition did much of the labor in improving the home.

A constructive trust is imposed to do equity and to prevent unjust enrichment. Nelson v. Seevers, 143 Neb. 522, 10 N. W. 2d 349 (1943); Box v. Box, 146 Neb. 826, 21 N. W. 2d 868 (1946). The measure of damages here

is the loss which plaintiff suffered as a consequence of defendants' breach of fiduciary duties. Plaintiff is entitled to a return of the commission, and to be made whole, but she is not entitled to obtain a windfall of the value of the improvements made by the Gullands or of the appreciation during their 2 years of ownership. The trial court found that plaintiff should have received $16,000 for the property, or $2,500 more than she did. The plaintiff is therefore entitled to judgment as found by the trial court in the sum of $810 against the defendants Stanley Portsche and Town & Country, and in the sum of $2,500 against all defendants.

The judgment of the District Court omitted any reference to interest. Plaintiff is further entitled to prejudgment interest at the rate of 6 percent per annum on the respective sums from June 1, 1971, and as so modified, the judgment is affirmed. Costs taxed to the defendants.

AFFIRMED AS MODIFIED.