SAM J. FIRMÁTURE, DOING BUSINESS AS FEDERAL BUSINESS EXCHANGE CORP., APPELLEE, V. SCOTT A. BRANNON, DOING BUSINESS AS SCHOOSH BOOMERS LOUNGE, APPELLANT.

388 N.W.2d 119

Filed June 13, 1986.   No. 85-206.

Nicholas J. Lamme of Yost, Schafersman, Yost, Lamme & Hillis, P.C., for appellant.

David J. Lanphier of McGill, Koley, Parsonage & Lanphier, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is a contract action brought in Dodge County Court by Sam J. Firmature, plaintiff-appellee, to collect a broker's commission for the sale of defendant-appellant's, Scott A. Brannon's, business, the Schoosh Boomers Lounge. The court found that Firmature breached his fiduciary duties with Brannon and that Firmature was not entitled to collect his commission. Firmature appealed to the district court, which reversed the lower court's order and awarded Firmature $4,550 plus costs.

Brannon assigns as error that the district court erred in finding and determining that Firmature had not breached his fiduciary duty in his relationship and dealings with defendant. We reverse and reinstate the judgment of the county court.

Firmature was a broker and consultant for the sale of business enterprises, doing business as Federal Business

Exchange Corp. Brannon was the owner and operator of Schoosh Boomers Lounge in Fremont. On April 6, 1983, James M. Foley met Brannon at the lounge and discussed the sale of the lounge. The testimony is in dispute as to whether Firmature arranged this meeting or whether it was arranged through the efforts of parties unrelated to this suit. On April 7 Foley discussed the possibility of buying the lounge with Firmature, who had been attempting to find a bar for Foley and his partner, Donnie Crum, to buy. Firmature met Brannon on April 7, and Brannon signed a commission agreement which provided for payment of a 7-percent commission on a sale price of $75,000 in the event that Federal Business Exchange Corp. was successful in arranging a sale of the business. The commission agreement protected the plaintiff on any prospect provided by him for a period of 180 days from the date of the agreement.

Negotiations took place among Brannon, Firmature, Foley, and Crum. Difficulties arose because of the lease agreement with the owner of the building where the lounge is located. On April 28 a meeting was held which was attended by Brannon, his brother, Crum, Firmature, and Firmature's girlfriend. At that meeting Firmature sat with Crum opposite the table from Brannon. Firmature attempted to persuade Brannon to accept less than the terms Brannon desired. Firmature did not act as Brannon's advocate in attempting to negotiate terms most favorable to Brannon. Brannon left the meeting confused because he had expected Firmature to represent Brannon's best interest, but Firmature's conduct was not consistent with Brannon's expectations. No agreement was reached at the conclusion of this meeting.

After the meeting a conversation with Firmature convinced Brannon that negotiations with Foley and Crum were broken off. Brannon called Firmature to ask for the original of the commission agreement back in case he wanted to pursue other options. He had no intentions of selling to Foley and Crum at that time. Firmature would not return the original to Brannon. The next week Foley called Brannon and they commenced negotiations. After three meetings and three or four phone calls, they came to an agreement about the terms of the sale.

The terms were substantially the same as the terms originally discussed when Firmature was involved. The sale was closed on August 8.

In his petition to recover the $4,550 commission, Firmature alleged that he had procured Foley as a purchaser for the lounge, that the lounge was sold to Foley within the time period provided for in the contract, that he was the efficient, procuring cause of the sale, and that Brannon had refused to pay the commission. Brannon answered that Firmature acted contrary to Brannon's best interest, that Firmature refused to cooperate with Brannon or with Foley, that Firmature negligently, carelessly, recklessly, and incompetently disregarded communications of Brannon and Foley, and that Firmature violated his fiduciary duties toward Brannon. The evidence in the record supports Brannon's allegations.

Brannon testified that he and Foley and Firmature had agreed that all offers were to be put in writing but that Firmature did not comply. Firmature denied that Brannon had told him he wanted everything in writing. Brannon, Foley, and Crum testified that communications between them were not always relayed by Firmature or were not done so accurately and promptly. Brannon, Foley, and Crum all testified that Firmature did not represent Brannon to the best of his ability. Firmature told both Foley and Crum that the bar was overpriced, the lease ridiculous, and the business neglected. He encouraged Foley to make lower offers with respect to the purchase price, downpayment, and interest than Brannon wanted. Brannon testified that he had to keep calling Firmature to get information and that he never knew where he stood. Finally, Brannon stated that it was his understanding that Firmature was representing him and no one else.

Firmature admitted at trial that he was representing both buyer and seller and had to be fair to both sides. He said, "You try to do the best you can and try to put the deal together." There seems to be no question that Firmature represented both parties in the sale of the lounge.

Neb. Rev. Stat. § 81-885.24 (Cum. Supp. 1982) provides that the Real Estate Commission shall have the power to censure the licensee or certificate holder or to revoke or suspend any license

or certificate whenever the licensee or certificate holder has been found guilty of any of the following unfair trade practices:

(19) Failing to deliver within a reasonable time a completed copy of any purchase agreement or offer to buy or sell real estate to the purchaser and to the seller;

. . . .

(22) Acting for more than one party in a transaction without the knowledge of all parties for whom he or she acts.

*Vogt v. Town & Country Realty of Lincoln, Inc.*, 194 Neb. 308, 231 N.W.2d 496 (1975), provides the following: A real estate broker is an agent owing a fiduciary duty (1) to use reasonable care, skill, and diligence in procuring the greatest advantage for his client, and (2) to act honestly and in good faith, making full disclosures to his client of all material facts affecting his interests. The burden of proof is upon the real estate agent to show that he satisfied the fiduciary duties he owed his principal. A commission cannot be collected by the real estate broker for his services if he has willfully disregarded, in a material respect, an obligation which the law devolves upon him by reason of his agency. See, also, *Allied Securities, Inc. v. Clocker*, 185 Neb. 524, 176 N.W.2d 914 (1970).

Evidence was introduced that, if believed, tends to show that Firmature violated his fiduciary duties with respect to Brannon. Therefore, he is not due a commission for his services.

It was the duty of the district court to review the case for error appearing on the record. Neb. Rev. Stat. § 24-541.06 (Reissue 1985). As there is evidence to support the decision of the county court, the decision should have been affirmed.

REVERSED.

HASTINGS, J., concurs in the result.

KRIVOSHA, C.J., concurring in the result.

I concur in the result reached by the majority in this case. I would do so, however, solely upon the ground that there was a question of fact as to whether Firmature willfully disregarded, in a material respect, an obligation which he owed to Brannon by reason of his agency relationship. That question of fact was resolved against Firmature and in favor of Brannon. On appeal

the district court is required to review the case for error appearing on the record made in the county court. See Neb. Rev. Stat. § 24-541.06 (Reissue 1985). The district court is not free to make new findings of fact and must affirm the judgment entered by the county court unless the judgment cannot be supported by the evidence. My review of the record discloses such not to be the case, and while had I been deciding the case initially, I am likely to have reached a contrary view, neither the district court nor this court is free to make such determination.