### Hardwick-Morrison Co. v. Stig Albertsson

[605 A.2d 529]

No. 90-079

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed February 28, 1992

---

*Peter H. Banse* of *Banse & McCoy, P.C.*, Manchester Center, for Plaintiff-Appellee.

*James B. Anderson* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellant.

**Gibson, J.** Defendant Stig Albertsson appeals a jury award of the balance due, plus interest, on pumping equipment plaintiff sold to Albertsson-Hunter Corporation, a company controlled by defendant. The jury found defendant Albertsson personally liable for the corporation's debt. We affirm.

## I.

At all times material, Albertsson-Hunter Corporation was in the business of selling water slides to amusement parks and recreation areas. It was owned by Albertsson Corporation, a holding company owned by defendant and his wife. Albertsson Corporation provided administrative services for Albertsson-Hunter and four other subsidiary corporations, and paid many of their operating expenses, such as rent, heat, utilities, insurance, payroll and payroll taxes. Defendant was a director of Albertsson Corporation and chairman of Albertsson-Hunter's board of directors. It is fair to say that he controlled the finances of Albertsson-Hunter.

In 1985, Albertsson-Hunter lost more than $200,000 on gross sales of $2,600,000. In early March 1986, the company's directors were informed that sales for 1986 were projected to decline 50 percent because liability insurers would no longer provide insurance for use of the water slides. The directors agreed the business had to be "reassessed." At trial, defendant conceded that the company's outlook was "bleak" in March of 1986. Nevertheless, Albertsson-Hunter continued in operation, and by the end of May 1986, had sold six additional water slides incorporating approximately $60,000 worth of plaintiff's pumping equipment. By mid July 1986, Albertsson-Hunter had completed work on all of its contracts, and by the end of that month, had been paid more than $580,000 for these six slides. Its total receipts for June and July amounted to nearly $750,000, but through July, it had paid plaintiff only $21,451.

In contrast, Albertsson-Hunter made substantial payments to Albertsson Corporation. In June 1986, Albertsson-Hunter paid Albertsson Corporation $94,000, and in July an additional $125,000, to repay the parent corporation for operating expenses and cash transfers it had paid on behalf of Albertsson-Hunter. At the end of July, Albertsson Corporation carried a balance due from Albertsson-Hunter of $77,963. This figure in-

cluded a charge of $51,330 for "administrative fees," the only time such a charge was ever made. In addition to the payments to Albertsson Corporation, Albertsson-Hunter made substantial payments to the other four subsidiaries in June and July. All told, out of total receipts of nearly $750,000 in June and July of 1986, some $327,500 went to Albertsson Corporation or its related subsidiary corporations.

Fearing it would not be paid the balance owed to it, plaintiff threatened in August of 1986 to file liens against the projects containing its equipment. The vice-president of Albertsson-Hunter asked plaintiff not to file the liens because they would delay payments from the projects to Albertsson-Hunter; he promised that defendant would provide a payment schedule forthwith. Defendant did so in a letter dated August 13 that he signed as chairman of Albertsson-Hunter. The letter set out a payment schedule running from August 31 through November 30. Albertsson-Hunter made the first payment of $9,614 on September 2, and a $468.51 portion of the September 30 payment on September 5,[1] but made no other payments.

On July 31, the books of Albertsson-Hunter showed losses of $116,765, cash on hand of $25,051, accounts receivable of $114,950, and trade debts of $307,760. On August 31, the company's losses totaled $148,349, and there was no cash on hand. Defendant decided in July or August that Albertsson-Hunter had to be liquidated, and in October he reached a tentative agreement to sell the business. The deal fell through, however, and Albertsson-Hunter filed for bankruptcy in December. By then the corporation had no assets of any value.

In March 1987, plaintiff sued defendant, alleging defendant had constructively defrauded it by diverting money Albertsson-Hunter had received from water slide customers to Albertsson Corporation and its subsidiaries. Plaintiff alternatively alleged that a Wisconsin statute required defendant to pay for labor and materials used in a project in that state before using funds received from such project for any other purpose. Wis. Stat. § 779.02(5). Because we affirm the constructive fraud verdict, we do not consider the applicability of the Wisconsin statute.

---

[1] This payment does not appear in the record as a cash disbursement, but plaintiff does not contest that it was made.

On the constructive fraud issue, defendant contends that (1) the trial court improperly denied his motions for directed verdict and judgment notwithstanding the verdict, (2) the court improperly instructed the jury, and (3) the court erred in the interrogatories it submitted to the jury.

## II.

Defendant argues that his motions for directed verdict and judgment notwithstanding the verdict should have been granted because the jury could not properly find him personally liable for the debt owed plaintiff. He maintains that he derived no benefit from plaintiff's loss, which was simply an unfortunate consequence of Albertsson-Hunter's demise. He claims Albertsson-Hunter paid plaintiff the same proportion of its account as it paid its other creditors, including Albertsson Corporation and its subsidiaries. Thus, defendant asserts, he should not be held personally liable to plaintiff, just as the owner or director of a bankrupt corporation should not be personally liable to its creditors.

In reviewing the grant or denial of motions for directed verdict and judgment notwithstanding the verdict, we view the evidence in the light most favorable to the nonmoving party and exclude the effect of modifying evidence. *Center v. Mad River Corp.*, 151 Vt. 408, 413, 561 A.2d 90, 93 (1989). Where fraud is alleged, proof must be made by clear and convincing evidence. *Bardill Land & Lumber, Inc. v. Davis*, 135 Vt. 81, 82, 370 A.2d 212, 213 (1977).

It is axiomatic that the shareholders, officers, and directors of a corporation ordinarily are not liable for its debts. See *Contractor's Crane Service, Inc. v. Vermont Whey Abatement Auth.*, 147 Vt. 441, 452, 519 A.2d 1166, 1174 (1986); *Douglas v. O'Connell*, 139 Vt. 427, 429, 429 A.2d 1310, 1311 (1981). This basic protection enables corporations to take legitimate financial risks without exposing their stockholders, officers and directors to personal liability. It does not, however, protect individuals from liability for their own wrongdoing. *Stuart v. Federal Energy Sys.*, 596 F. Supp. 458, 459 n.1 (D. Vt. 1984); *Lyon v. Bennington College Corp.*, 137 Vt. 135, 139, 400 A.2d 1010, 1013 (1979). Thus, the outcome herein turns on whether the jury could properly find that defendant's personal conduct was wrongful; if so, plaintiff may be granted relief.

■ Constructive fraud may occur where a wrongful act injures another but is done without bad faith or a malevolent purpose on the part of the perpetrator. It may be found in cases involving misrepresentations that do not rise to the level of deceit, or actual fraud, e.g., *Proctor Trust Co. v. Upper Valley Press, Inc.*, 137 Vt. 346, 354, 405 A.2d 1221, 1226 (1979), and in cases where a party in a position of superior knowledge or influence intentionally gains an unfair advantage at the expense of another person. E.g., *Griffin v. Griffin*, 125 Vt. 425, 437–38, 217 A.2d 400, 410 (1965) (bank president who had also been plaintiff's lawyer secured assignment of securities from plaintiff to bank, to bank's unfair advantage). Constructive fraud is an equitable claim that typically has not afforded relief in the form of monetary damages. See *Union Bank v. Jones*, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980) (innocent or negligent misrepresentations may be grounds for rescission); *Griffin*, 125 Vt. at 445, 217 A.2d at 415 (securities restored to plaintiff). In the present case, however, defendant did not argue that plaintiff could not recover damages if it proved its case,[2] but, rather, contended that plaintiff had failed to show wrongdoing. Under these circumstances, we will review the case as it proceeded below. See *MacDonald v. Roderick*, 158 Vt. 1, 4, 603 A.2d 369, 370–71 (1992) (defendants could not change nature of fraud claim on appeal).

Plaintiff contends that defendant wrongfully diverted funds from Albertsson-Hunter to Albertsson Corporation and its subsidiaries under the guise of reimbursements and administrative fees when he knew Albertsson-Hunter was going out of business, and that defendant should first have paid the trade creditors who made completion of the projects possible. Plaintiff relies primarily on the proposition that the directors of an insolvent corporation may not prefer their own claims to those of the corporation's creditors.[3] 15A W. Fletcher, Cyclopedia of the

---

[2] Defendant's argument, *infra*, that the court erred in instructing the jury on the meaning of the term "benefit" touches on this issue. Defendant, however, did not argue to the court that damages were unavailable under plaintiff's theory, but rather that the jury had to be told that only a material or pecuniary gain to plaintiff would entitle it to recover.

[3] Defendant claims plaintiff raised this theory for the first time on appeal,

Law of Private Corporations § 7469 (perm. ed. 1984); *Boyd v. Boyd & Boyd, Inc.*, 386 N.W.2d 540, 542 (Iowa Ct. App. 1986); see *Association of Haystack Property Owners v. Sprague*, 145 Vt. 443, 448, 494 A.2d 122, 126 (1985) (trial court improperly dismissed suit alleging breach of fiduciary duty owed by corporate directors to creditors).

■ Defendant claims the flow of funds from Albertsson-Hunter to Albertsson Corporation repaid a legitimate debt in proportion to the repayment of other creditors. In making this claim, defendant points to financial data covering the year 1986 as a whole. The evidence, however, showed that in June and July of that year, after plaintiff's work had been completed and Albertsson-Hunter had received substantial payments on its projects, Albertsson-Hunter paid Albertsson Corporation a considerably greater proportion of its outstanding balance than it paid plaintiff. In addition, Albertsson-Hunter made other substantial payments to the subsidiary corporations. In August, at about the same time he decided to liquidate Albertsson-Hunter, defendant promised to pay plaintiff according to a payment schedule that could not be met, inducing plaintiff to forego placing liens on the projects that incorporated its equipment. We conclude that in the context of the case as it was argued at trial, the jury could properly find by clear and convincing evidence that defendant committed a fraud on plaintiff by wrongfully trying to recoup his own losses before paying plaintiff. The trial court did not err in denying defendant's motions for directed verdict and judgment notwithstanding the verdict.

## III.

■ With respect to the trial court's instructions to the jury, defendant argues, first, that the court should have instructed the jury on the law of guaranty, because plaintiff's president testified that he thought defendant was liable on the basis of the August 13 letter setting forth a specified payment schedule. Plaintiff, however, neither pled nor argued that defendant was

denying defendant his right to a trial by jury. We disagree; the rule relied on by plaintiff simply recognizes as wrongful the type of conduct plaintiff argued to the jury.

liable as a guarantor; as the court noted, the letter was relevant to the issue of the wrongfulness of defendant's conduct. The court was duty-bound to charge on each issue essential to resolution of the controversy, *Allen v. Uni-First Corp.*, 151 Vt. 229, 232, 558 A.2d 961, 963 (1988), but the law of guaranty was not part of the case. We are satisfied that the court met its duty.

■   Second, defendant argues that the court erred in instructing the jury that the definition of constructive fraud requires that the wrongdoer benefit from his wrongful act and that "benefit is described as an advantage going to profit or privilege including the pecuniary advantage of the alleged wrongdoer." Defendant contends that this definition of "benefit" impermissibly relaxed the standard of liability because "benefit" should be limited to "some sort of pecuniary or material gain." To support this contention, he asserts that Vermont law requires a constructive trust to be imposed whenever constructive fraud is found. Because a constructive trust cannot be imposed on an unidentified res, defendant argues that the requirement that a trust be imposed indicates that a wrongdoer must obtain some material gain. In the present case, there was no identifiable fund remaining, but because defendant owned the corporation to which the funds had been transferred, the jury could find that defendant had benefited from his conduct. Because the case proceeded through trial as an action for damages, we do not address defendant's argument concerning constructive trusts. The court's instruction was not error.

## IV.

■ ■   Finally, defendant argues that, because of the complexity of the issues, the court erred in refusing to submit detailed interrogatories to the jury. In cases involving overlapping and multiple theories of liability, this Court encourages the use of special interrogatories, as authorized by V.R.C.P. 49(b), *Allen v. Uni-First*, 151 Vt. at 232, 558 A.2d at 963, but it is within the trial court's discretion to decide whether to do so. *English v. Myers*, 142 Vt. 144, 150, 454 A.2d 251, 254 (1982). The adequacy of interrogatories is determined by a review of the jury instructions as a whole. *Brennen v. Mogul Corp.*, 151 Vt. 91, 95, 557 A.2d 870, 872 (1988).

█ In the present case, the court properly instructed the jury and submitted interrogatories sufficient to determine the issue of defendant's liability on both of plaintiff's theories. Cf. *Contractor's Crane Service*, 147 Vt. at 445, 519 A.2d at 1170 (where no interrogatories are submitted in a case involving multiple theories, reviewing court cannot determine the basis of jury verdict). Although the court's interrogatories were far less detailed than those proposed by defendant, the court did not abuse its discretion in proceeding as it did.

*Affirmed.*