Filed 11/19/24

| | | |
|---|---|---|
| VERMONT SUPERIOR COURT<br>Chittenden Unit<br>175 Main Street<br>Burlington VT 05401<br>802-863-3467<br>www.vermontjudiciary.org |  | CIVIL DIVISION<br>Case No. 24-CV-01406 |

---

Katherine Baker et al v. Otter Creek Associates, Inc. et al

---

## DECISION ON MOTION TO DISMISS

Plaintiffs Katherine Baker, Philip LaPlante, and Sarah Stout sue Defendants Otter Creek Associates ("Otter Creek") and Matrix Health Systems, P.C. ("Matrix") for damages arising out of their joining the Otter Creek/Matrix practice group in Brattleboro. They assert a litany of claims: violation of the Vermont Consumer Protection Act, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, constructive fraud, and negligent misrepresentation and nondisclosure. Defendants move to dismiss twelve of the eighteen claims. The court grants the motion in part and denies it in part.

## FACTS ALLEGED

The purpose of a motion to dismiss "is to test the law of the claim, not the facts which support it." *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002). Thus, on a motion to dismiss, the court assumes the truth of the facts alleged, making all reasonable inferences in the plaintiff's favor. *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514. For purposes of this motion, then, the following factual narrative is the platform for the court's legal analysis.

Ms. Baker, Dr. LaPlante, and Ms. Stout are mental health clinicians who specialize in the provision of psychiatric and mental health services to child and adult patients. Otter Creek and Matrix are Vermont corporations that "held themselves out as joint operators of [a] medical group practice." While Ms. Baker, Dr. LaPlante, and Ms. Stout each signed separate agreements with Otter Creek, they allege that Otter Creek and Matrix worked together and that the individuals each plaintiff met with when deciding whether to join the practice group were affiliated with both Otter Creek and Matrix. They allege further that they "joined Defendants' group practice at Defendants' Brattleboro, Vermont location to receive the office space and administrative services necessary to run their practices." Plaintiffs assert that both Defendants were responsible for failing to credential them properly to enable them to be paid for services they provided, both Defendants engaged in erroneous and incomplete

billing practices, both Defendants engaged in improper collection practices, and both Defendants failed to fulfill their obligations regarding scheduling, maintaining a safe and secure office, and other administrative functions. They also allege that both Defendants "engaged in deceptive acts or practices in commerce in their marketing and promotion of their services, including the provision of office space and administrative services." Finally, they allege that Defendants made misrepresentations and material omissions in inducing each Plaintiff to sign their agreements.

## ANALYSIS

On these basic facts, the Complaint sets forth 18 claims—six substantially identical claims on behalf of each the three Plaintiffs: violation of the Vermont Consumer Protection Act, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, constructive fraud, and negligent misrepresentation and nondisclosure. Defendants move to dismiss all but the breach of contract and negligent misrepresentation and nondisclosure claims. They also move to dismiss all claims against Matrix. The court begins its analysis with the propriety of naming Matrix, and then turns to each of the substantive claims, in the order they appear in the Complaint.

### Matrix as Party

Plaintiffs assert that Otter Creek alone is liable for breach of contract and breach of the implied covenant of good faith and fair dealing and that both Otter Creek and Matrix are liable for the other causes of action. Defendants contend that the claims against Matrix are based on negotiations that occurred before Plaintiffs signed their affiliation agreements and contracted with Otter Creek for the provision of administrative services and office space and that Plaintiffs allege no facts indicating that Matrix was involved in any negotiations or the formation of the affiliation agreements. The short answer to this argument is that it is an attack not on the sufficiency of the allegations of the Complaint, but instead on the proof of those allegations.

In the Complaint, Plaintiffs allege that Otter Creek and Matrix "held themselves out as joint operators of the medical group practice." Complaint ¶ 8. Plaintiffs base this statement on Defendants' employees' email signatures, which included both "Otter Creek Associates" and "Matrix Health Systems"; the domain name for the employees' email addresses, which was "ocamhs.com"; Defendants' organizational chart, which included both entities at the top; checks Defendants gave to Plaintiffs were drawn on an account identified as "Matrix Health Systems, P.C."; the business associate agreement that each plaintiff signed identified the "business associate" as "Matrix Health Systems, PC/Otter Creek Associates"; and credit card payments by patients were processed using a "Matrix Health Systems Merchant Account." *Id*. Even though Plaintiffs' affiliation agreements were

with Otter Creek, Plaintiffs assert that Otter Creek and Matrix worked together and that the individuals each plaintiff met with when deciding whether to join the practice group were affiliated with both Otter Creek and Matrix. Plaintiffs assert that both Defendants were responsible for failing to credential them properly to enable them to be paid for services they provided, *id*. ¶¶ 50–65, both Defendants engaged in erroneous and incomplete billing practices, *id*. ¶¶ 66–81, both Defendants engaged in improper collection practices, *id*. ¶¶ 82–86, and both Defendants failed to fulfill their obligations regarding scheduling, maintaining a safe and secure office, and other administrative functions, *id*. ¶¶ 87–93.

Apparent authority is based on " 'conduct of the principal, communicated or manifested to [a] third party, which reasonably leads the third party to rely on the agent's authority.' " *Lakeside Equip. Corp. v. Town of Chester*, 2004 VT 84, ¶ 7, 177 Vt. 619 (mem.) (quoting *Lakeside Equip. Corp. v. Town of Chester*, 173 Vt. 317, 325 (2002)) (further quotation and citation omitted).

> "Apparent authority may arise when the actions of the principal, reasonably interpreted, cause a third person to believe in good faith that the principal consents to the acts of the agent. Apparent authority also may arise when the principal knowingly permits the agent to act in a certain manner as if he were authorized. The action or manifestation of authority giving rise to the reliance must be that of the principal, and the reliance by the third person on the action or manifestation of authority must be reasonable."

*New England Educ. Training Serv., Inc. v. Silver St. P'ship*, 148 Vt. 99, 105 (1987) (quoting *Miller v. Mueller*, 343 A.2d 922, 926 (Md. Ct. Spec. App. 1975)); *see* Restatement (Second) of Agency § 27 cmt. a (finding apparent authority requires that principal intends third party to believe agent is authorized to act for it or that its conduct is likely to create such belief).

Plaintiffs contend that Defendants were acting as a single unit and that they reasonably believed Otter Creek had authority to act on Matrix's behalf. *Cf. In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 534 (5th Cir. 2014) (agency relationship established where principal and agent held themselves out as same entity to customers and where agent used principal's email address, phone number, business card, and websites). "It is usually a question for the trier of fact whether a reasonable person in the position of a third party would believe that an agent had the authority or the right to do a particular act." Restatement (Third) of Agency § 2.03 cmt. d. "It is a separate but related question of fact whether such a belief is traceable to a manifestation of the principal." *Id*.

Plaintiffs have sufficiently alleged Matrix's involvement in the various activities that are the subject of the Complaint, either directly or through Otter Creek as its agent. While the motion to dismiss amply suggests reasons to believe that Plaintiffs may not be able to prove many of these allegations, that is not the function of a motion to dismiss. For present purposes, it suffices to say that Plaintiffs' allegations against Matrix are sufficient. Rule 56, not Rule 12(b)(6), is the proper vehicle for

testing the evidence underlying those allegations. The claims against Matrix stand, to the extent they survive the substantive challenges addressed below.

Vermont Consumer Protection Act

In their consumer protection claims, Plaintiffs allege that both Defendants "engaged in deceptive acts or practices in commerce in their marketing and promotion of their services, including the provision of office space and administrative services[.]" Complaint ¶¶ 102, 112, 122. For purposes of the Act, a trade or practice is deceptive if it involves (1) a representation, practice, or omission by a defendant that is likely to mislead consumers, (2) a plaintiff's interpretation of the defendant's representation, practice, or omission that is reasonable in the circumstances, and (3) materiality of the defendant's representation, practice, or omission on the plaintiff's conduct in the transaction. *Ianelli v. U.S. Bank*, 2010 VT 34, ¶ 10, 187 Vt. 644 (mem.) (citing *Jordan v. Nissan N. Am., Inc.*, 2004 VT 27, ¶ 5, 176 Vt. 465).

A party violates the VCPA if it engages in unfair or deceptive acts or practices "in commerce." 9 V.S.A. § 2453(a); *see Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶¶ 17–21, 195 Vt. 524. While the Act does not define "in commerce," case law makes clear that the transaction at issue must "occur in the consumer marketplace," and it must be " 'in the context of an ongoing business in which the defendant holds himself out to the public.' " *Id.*, 2013 VT 111, ¶ 21 (quoting *Zeeman v. Black*, 273 S.E.2d 910, 915 (Ga. Ct. App. 1980)). Further, the conduct "must have a potential harmful effect on the consuming public, and thus constitute a breach of a duty owed to consumers in general." *Id.* (citing *Zeeman*, 273 S.E.2d at 915). The following factors are relevant in determining whether a given party's transaction occurred in the consumer marketplace: "(1) whether the offer [or representation] was held out to the public at large; (2) whether the transaction involved products, goods, or services purchased or sold for general consumption; and (3) whether the transaction was customized such that it was not one that typically occurs in the consumer marketplace." *Hoehl Family Found. v. Roberts*, No. 5:19-cv-229, 2020 WL 10790035, at *16 (D. Vt. Oct. 15, 2020) (citing *Foti Fuels*, 2013 VT 111, ¶ 25).

Otter Creek and Matrix contend that the transactions with Plaintiffs were not "in commerce" because the office space and services they offered were not marketed to the public at large. In response, Plaintiffs argue that Otter Creek marketed itself to all mental health clinicians who practiced or wanted to practice in Vermont. The Complaint alleges that Otter Creek marketed its services through a website, which stated that Otter Creek had "over 30 years of experience in providing billing and administrative services to licensed mental health clinicians throughout Vermont." Complaint ¶ 12. According to its website, Otter Creek had thirteen offices located around the State, managed medical

billing for over 80 providers, and its services were "ideally suited for social workers, counselors, psychiatrists, therapists, medical professionals and more." *Id*. ¶ 14. Otter Creek's website, a page of which is attached as Exhibit 1 to the complaint, advertises "Billing Services for Clinicians" and includes a phone number to call for "Medical and Mental Health Billing Services in Vermont." Exh. 1 to Complaint. The website represents that Otter Creek's billing professionals:

- Offer expertise in billing procedures to all insurance carriers in Vermont
- Submit billing claims daily
- Provide monthly patient statements
- Can assist with credentialing
- Follow up on claims that are unpaid, paid incorrectly, or need appeals
- Can customize the bill to your business
- Know what diagnosis codes work and where to submit each claim
- Give personalized attention to your clinical practice
- Compile monthly and annual reports for our account

*Id*.

These allegations are more than sufficient to support the characterization of Otter Creek as operating in the consumer marketplace. It matters not that Otter Creek offered its services only to "social workers, counselors, psychiatrists, therapists, medical professionals and more"; "just because the services offered are directed to a subset of the general public does not mean that the services are not for 'general consumption.' Not everyone desires to or can afford to own real estate, yet the VCPA applies to companies engaged in the sale of real estate." *Hoehl Family Foundation*, 2020 WL 10790035, at \*18.

Defendants make three additional attacks on the VCPA claims. First, they assert that Ms. Baker and Ms. Stout's prior relationship with them—both worked at the Brattleboro office as part of their nursing school programs before entering into their affiliation agreements—defeats the characterization of their claims as occurring in the consumer marketplace. This argument, however, overlooks the fact that the VCPA claims arise not out of the prior relationship, but instead out of the representations that Defendants made more broadly to the general class of "social workers, counselors, psychiatrists, therapists, medical professionals and more."

Second, Defendants attack Ms. Baker's VCPA claim because the documents attached as exhibits to the complaint show that Otter Creek and Matrix did not form a plan to close the Brattleboro office until after Ms. Baker's affiliation agreement was executed. Those documents reflect that Ms. Baker signed her affiliation agreement on December 7, 2020, and a memo addressed to "OCA/MHS Clinicians" disclosing Otter Creek and Matrix's decision to close the Brattleboro office was dated just

ten days later. *See* Exhs. 1 and 8 to Complaint. The memo does not indicate, however, when Defendants decided to close the practice. That the decision was announced on December 17 does not foreclose the possibility that it had been made before December 7. Indeed, it is reasonable to assume that a decision as weighty as to close a practice was not made overnight. Thus, giving Ms. Baker the benefit of all reasonable inferences, her VCPA claim survives.

Otter Creek and Matrix also argue that Ms. Baker has waived her VCPA claim because she entered into a contract renewal after learning of Defendants' plans to close down the office. Ms. Baker alleges she first learned of the plans to sell the office building in January 2021. Complaint ¶ 96. She entered into a contract renewal the following year, in March 2022, effective from April 1 through December 31, 2022. *See* Exh. 3 to Complaint. Despite the memo in December 2020 addressing Defendants' plans to close the office "in the early part of 2021," the office was still operating in March 2022, over a year later. Again giving Ms. Baker the benefit of all reasonable inferences, it is reasonable for her to have believed at that time—at least in the absence of unequivocal evidence to the contrary—that Defendants had abandoned their earlier plans to close the office. The waiver argument thus fails.

<u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

The covenant of good faith and fair dealing is implied in every contract and " 'serves to ensure that parties to a contract act with faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.' " *Baldauf v. Vt. State Treasurer*, 2021 VT 29, ¶ 27, 215 Vt. 18 (quoting *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 62, 212 Vt. 612); *accord Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 161 Vt. 200, 208 (1993) (quoting Restatement (Second) of Contracts § 205 comment a). "An underlying principle implied in every contract is that each party promises not to do anything to undermine or destroy the other's rights to receive the benefits of the agreement." *Carmichael*, 161 Vt. at 208 (citing *Shaw v. E.I. DuPont de Nemours & Co.,* 126 Vt. 206, 209 (1966)). It is well-accepted, however, that " '[w]here a party alleges both breach of contract and breach of the implied covenant of good faith and fair dealing, dual causes of action are permitted only where the different actions are premised on different conduct[.]' " *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 53 (quoting *Tanzer*, 2018 VT 124, ¶ 33).

This principle mandates dismissal of the implied covenant claims here. In their breach of contract counts, Plaintiffs allege that Otter Creek failed to provide the administrative services it agreed to provide pursuant to the terms of the affiliation agreements and the course of conduct that the parties had established. Their implied covenant claims rest on the same foundation. Plaintiffs allege no other

conduct separate from Otter Creek's breach of obligations under the agreements themselves. Accordingly, Counts Seven–Nine fail to state a claim on which relief can be granted.

<u>Fraud Claims</u>

"The essential elements of a fraud claim are (1) intentional misrepresentation of a material fact; (2) that was known to be false when made; (3) that was not open to the defrauded party's knowledge; (4) that the defrauded party acts in reliance on that fact; and (5) is thereby harmed." *Estate of Alden v. Dee*, 2011 VT 64, ¶ 32, 190 Vt. 401 (citing *Lewis v. Cohen*, 157 Vt. 564, 568 (1991)). Importantly, for purposes of this case, "liability for fraud may be premised 'on the failure to disclose material facts as well as on affirmative misrepresentations.' " *In re Strouse*, 2011 VT 77, ¶ 15, 190 Vt. 170 (quoting *Sugarline Assocs. v. Alpen Assocs.*, 155 Vt. 437, 444 (1990)). Plaintiffs base their fraud claims on Defendants' intentional misrepresentations regarding the administrative and other services they promised to provide as well as on Defendants' failure to disclose their plans to sell the Brattleboro office building and close the practice. Plaintiffs assert that this intention was a material fact—that they would not have agreed to affiliate with Defendants, or in the case of Ms. Baker to renew her contract, had they known of Defendants' plans. They assert further that Defendants knew that if this plan were disclosed, Plaintiffs would not have executed their affiliation agreements and joined the practice. Defendants argue that these claims are deficient because (1) Plaintiffs failed to allege facts indicating an intent to defraud, (2) they had no duty to disclose any plans they may have had about selling the building and closing the Brattleboro practice, and (3) Ms. Baker fails to plead damages.

Defendants' first argument rests on the uncontroversial assertion that fraud must be pleaded with specificity. V.R.C.P. 9(b). They take issue with Plaintiffs' allegation that Defendants "knew" that disclosure of their intent to close the Brattleboro office would keep Plaintiffs from affiliating with the office; they contend that Plaintiffs fail to plead that Defendants acted with malice in withholding this information from them. In the context of this case, however, "malice" is not a necessary element. Instead, Plaintiffs must plead and prove only knowledge and intent; "malice" is then implicit. *See Follo v. Florindo*, 2009 VT 11, ¶ 46, 185 Vt. 390; *see also Proctor Trust Co. v. Upper Valley Press, Inc.*, 137 Vt. 346, 354 (1979) (" 'Actual fraud' is deceitful misrepresentation or concealment with evil intent[.]") (citation omitted). Rule 9(b) specifically states that "[m]alice, intent, knowledge, and other condition of mind . . . may be averred generally." Thus, while Defendants may question Plaintiffs' ability to prove their allegations of knowledge, those allegations are sufficient to state a claim.

Defendants next suggest that they had no duty to disclose their intentions because they were not in a confidential or fiduciary relationship with Plaintiffs. The duty to disclose, however, is not limited

to confidential or fiduciary relationships. It also applies to situations where one party has " 'superior knowledge or means of knowledge.' " *Lay v. Pettengill*, 2011 VT 127, ¶ 14, 191 Vt. 141 (quoting *White v. Pepin*, 151 Vt. 413, 416 (1989)); *accord Silva v. Stevens*, 156 Vt. 94, 103 (1991); *see also Cheever v. Albro*, 138 Vt. 566, 571 (1980) (" 'The test of liability for failure to disclose facts material to the transaction is some duty, legal or equitable, arising from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge.' ") (quoting *Newell Bros. v. Hanson*, 97 Vt. 297, 304 (1924)). Plaintiffs allege that none of them knew of Defendants' plans to close the practice or sell the building when they first agreed to join the practice and signed their affiliation agreements, and that Ms. Baker reasonably assumed in March 2022, when she signed her contract renewal, that Defendants had decided not to sell the office building after all.

This is not a situation " 'where facts are equally within the means of knowledge of both parties, [such that] neither party is required to speak, in the absence of inquiry respecting such matters.' " *Lay*, 2011 VT 127, ¶ 14 (quoting *White*, 151 Vt. at 416 (further citations omitted)). It is more like the situation in *Silva*, where sellers of a house withheld information about its true condition to induce the buyers to purchase the house. 156 Vt. at 98–100. In response to the buyers' claim for fraudulent nondisclosure, the sellers denied they had any duty to disclose the withheld information because the parties were engaged in an "arm's length transaction." *Id*. at 103. The Court disagreed, stating: "A duty 'aris[es] from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge.'" *Id*. (quoting *Cushman v. Kirby*, 148 Vt. 571, 575 (1987)). The Court concluded that such a duty arises " '[w]here material facts are accessible to the [defendant] only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the [plaintiff].' " *Id*. (quoting *Cushman*, 148 Vt. at 576 (further citation omitted)); *accord Vinci v. V.F. Corp.*, No. 2:17-cv-00091, 2018 WL 1027429, at *9 (D. Vt. Feb. 21, 2018). Plaintiffs' allegations sufficiently satisfy this test.

With respect to Ms. Baker, Defendants argue that she could not have suffered damages because she opted to renew her contract in March 2022. Ms. Baker asserts that she relied on the automatic renewal provision of her affiliation agreement and that if she had known Defendants had no intention of allowing the agreement to renew automatically at the end of the term, she would not have initially entered into the affiliation agreement with Otter Creek. Complaint ¶¶ 173–74. Ms. Baker asserts she was harmed by Defendants' representations and omissions and, as a result, lost income and patients and incurred costs. *Id*. ¶ 175. Because she has asserted damages suffered as a result of Defendants' misrepresentations and omissions, Ms. Baker has stated a claim for fraud.

<u>Constructive Fraud</u>

Finally, Defendants seek dismissal of Plaintiffs' constructive fraud claims (Counts Thirteen–Fifteen). "Constructive fraud may occur where a wrongful act injures another but is done without bad faith or a malevolent purpose on the part of the perpetrator." *Hardwick-Morrison Co. v. Albertsson*, 158 Vt. 145, 150 (1992) (cited with approval by *McDougall v. Lamson*, No. 2021-149, 2021 WL 6052832, at *2 (Vt. Dec. 17, 2021) (unpub. mem.)). Where a misrepresentation does not rise to the level of deceit or actual fraud, or where a party is "in a position of superior knowledge" and "gains an unfair advantage" at another's expense, a cause of action for constructive fraud may be appropriate. *Albertsson*, 158 Vt. at 150 (citing *Proctor Trust Co.*, 137 Vt. at 354; *Griffin v. Griffin*, 125 Vt. 425, 437–38 (1965)).

In their constructive fraud claims, Plaintiffs seek only monetary damages. Complaint ¶¶ 212, 224, & 236. Money damages, however, are generally not recoverable under a theory of constructive fraud. *Albertsson*, 158 Vt. at 150 ("Constructive fraud is an equitable claim that typically has not afforded relief in the form of monetary damages."); *see* 10 American Law of Torts § 32:11 n.1 ("constructive fraud or inequitable conduct is remedial in equity"); 37 C.J.S. *Fraud* § 5 ("Constructive fraud is an equitable claim that typically does not afford a relief in the form of monetary damages."). Moreover, Plaintiffs have failed to allege that they and Defendants share the kind of "confidential relationship" that many courts around the country have held is required to support a constructive fraud claim. *See, e.g., Thompson v. UBS Fin. Servs., Inc.*, 443 Md. 47, 69 (Md. 2015) ("For constructive fraud's purposes, a defendant owes an equitable duty to a plaintiff where the parties are in a confidential relationship."); *Jensen v. IHC Hospitals, Inc.*, 944 P.2d 327, 339 (Utah 1997) ("Constructive fraud requires two elements: (i) a confidential relationship between the parties; and (ii) a failure to disclose material facts."); *Vogt v. Town & Country Realty of Lincoln, Inc.*, 194 Neb. 308, 231 N.W.2d 496 (1975) ("Constructive fraud involves a breach of a fiduciary duty . . . ."). Accordingly, these counts fail to state a claim for which relief can be granted.

## <u>ORDER</u>

The court grants the motion to dismiss in part and denies it in part. Plaintiffs' claims for breach of the covenant of good faith and fair dealing (Counts Seven–Nine) and constructive fraud (Counts Thirteen–Fifteen) are dismissed. The remaining claims survive. The parties shall confer and submit a discovery stipulation within thirty days of this order.

Electronically signed pursuant to V.R.E.F. 9(d): 11/19/2024 12:53 PM

_____
Samuel Hoar, Jr.
Superior Court Judge