## A. R. Hill v. Mary A. Montgomery.

1. PUNITIVE DAMAGES—*When Properly Allowed.*—Punitive damages are proper in a case where an attorney falsely gives a client information that leads her to a second marriage and renders her liable to indictment and prosecution for bigamy.

2. EXCESSIVE DAMAGES — *When $5,000 is Not.*—A woman whose husband had been convicted of felony and sentenced to the penitentiary, employed an attorney to procure a divorce for her, and who, in obedience to such employment, filed a bill which was afterward dismissed for want of prosecution, but upon being informed by the attorney that she was legally divorced, married again, and resumed marriage relations and continued the same until she received information of the true state of affairs, when she sued the attorney and recovered a judgment for $5,000, which is held not to be excessive.

3. ATTORNEYS—*Duties Toward Clients.*—The law requires of an attorney the utmost degree of fidelity toward all who may employ him. So deeply imbedded is this idea in our jurisprudence, and so jealous is the law of the rights of a client, dealing with his attorney, that not only is the attorney precluded from taking advantage of his superior knowledge and skill to the detriment of the client, but in all controversies between them the burden is on him to show that he truthfully informed his client as to all the facts and his rights in the premises.

4.  NEW TRIALS—*When Allowed on Cumulative Testimony.*—A new trial will not be granted to enable a losing party to produce cumulative evidence, unless it appears that such evidence is so clear and conclusive that it will cause a different verdict from another jury.

Action in Case.—Misconduct of attorney.  Trial in the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding.  Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1889.  Affirmed.  Opinion filed September 20, 1899.

SALMANS & DRAPER, attorneys for appellant.

DYER & WALBRIDGE and WILSON & BUCKINGHAM, attorneys for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

Appellee, whose husband had been convicted of felony and sentenced to confinement in the penitentiary, employed appellant, a practicing attorney of the Vermilion county bar, to procure for her a divorce.  In obedience to the employment, appellant, on September 15, 1896, filed a bill for divorce in the Circuit Court, and procured service of summons upon the defendant therein, John Montgomery. At the October term, 1896, of that court a default and decree *pro confesso* were entered against Montgomery and the cause continued for evidence.

At the January term, 1897, the cause was dismissed for want of prosecution at the costs of the complainant.

On the 24th of October, 1896, appellee visited appellant's office and claims that at that time paid a balance due as fee and costs, and was informed by him that he had procured a divorce for her.  Under the belief that she was legally divorced and free to contract a second marriage, she, within a short time thereafter, married one John Hampton, and continued to live with him as his wife until December 30, 1898, when she learned for the first time that no decree divorcing her from John Montgomery had ever been rendered.

She at once left Hampton and began this suit for dam-

ages against appellant. A trial by jury was had in the Circuit Court resulting in a verdict for appellee for $5,000. A motion for new trial was made and urged chiefly upon the ground of newly-discovered evidence. The Circuit Court overruled the motion and rendered judgment on the verdict.

An appeal is prosecuted from that judgment, and in seeking a reversal it is urged that the court erred in ruling upon the admissibility of evidence; that he made improper remarks within the hearing of the jury, which were prejudicial to the defendant; that he gave erroneous instructions for the plaintiff; that the verdict is against the weight of the evidence; that the damages awarded are excessive, and that a new trial should have been granted upon the affidavits of newly-discovered evidence.

The court refused to allow counsel for the defendant upon cross-examination of the plaintiff to inquire, whether she did not first become acquainted with John Hampton at a house of prostitution in Danville. The court properly ruled. In the first place, the inquiry was not legitimate cross-examination. Secondly, while the law recognizes the right of a defendant, sued in this kind of an action, to show, in mitigation of damages, the general bad character of the plaintiff, it can not be shown by proof of specific acts.

The remarks of the court complained of were provoked by the persistent evasion of one of Hill's female witnesses, and her attempt to get before the jury irresponsive matter as to where she had seen the plaintiff. While the record would appear better, perhaps, if those remarks were not in it, we can not see that they seriously prejudiced the defense.

The instructions are singularly free from error. Those complained of are stock instructions, and are given daily in the trial of actions of trespass and case.

It would render this opinion entirely too lengthy to discuss in detail the numerous contradictions in the testimony over minor matters.

The frictional question of fact, on which the case hinged, was whether Hill told Mrs. Montgomery, when she visited

his office on the 24th of October, 1896, that he had procured
a decree for divorce.   The conflict was sharp and pointed
between the testimony of the two on that issue.   A careful
review of the entire evidence, as presented by the record,
satisfies us that the jury correctly found the fact, and that
Hill did represent to her that he had procured the divorce.
While her testimony appears entirely reasonable, and her
subsequent conduct consistent with having received such
information, Hill was so thoroughly impeached as to justify
a jury in saying that he was not worthy of belief.

The amount of the damages awarded has been to us the
most serious and troublesome question in the case.

It is clear the jury must have allowed punitive damages.

Were the facts and circumstances such as to justify the
visitation of that character of damages upon the defendant?
In the honorable calling professed by him the law required
of Hill the utmost degree of fidelity toward all who might
employ him.   So deeply imbedded is that idea in our juris-
prudence, so jealous is the law of the rights of a client
dealing with his attorney, that not only is the attorney
precluded from taking advantage of his superior knowl-
edge and skill to the detriment of the client, but in all
controversies between them the burden is on him to show
that he truthfully informed his client as to all the facts and
his rights in the premises.

Here is a case in which the attorney, to secure payment
of the balance of a fee agreed upon, falsely represented to
his client that he had completed the service for which he
had been employed.

He falsely gave his client information that led her to a
second marriage and thereby rendered her liable to indict-
ment and prosecution for felony.   Taking into considera-
tion the perfidy of Hill's conduct, and the dangers incident
to his client acting upon the false information given her, we
have concluded that the case is one calling for punitive
damages, and that those allowed are not excessive.

The court properly refused to grant a new trial upon the
ground of newly-discovered evidence.   The matter set up

in the affidavits filed in support of the motion only tended to the contradiction and impeachment of the plaintiff. It was merely cumulative, and was not conclusive. The law is firmly settled that a new trial will not be granted to enable a losing party to produce cumulative evidence, unless it appears that such evidence is so clear and conclusive that it would certainly cause a different verdict from another jury. Martins v. Ehrenfels, 24 Ill. 187; Monroe v. Snow, 131 Ill. 126; Bemis v. Horner, 165 Ill. 347.

No substantial error appearing in the record, the judgment will be affirmed.