Proctor Trust Company and Alfred R. Leblanc and Lyman Cousens, Counter-defendants v. Upper Valley Press, Inc., Charles F. Harris, Jr., and Margaret Carolyn Harris a/k/a Carolyn F. Harris and a/k/a Carol F. Harris

[405 A.2d 1221]

No. 210-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 12, 1979

Entry Amended July 2, 1979. Motion for Reargument Denied July 10, 1979.

*Crowley, Banse & Kenlan,* Rutland, for Plaintiff.

*Stephen C. Walke, Jr.,* and *Paterson, Gibson & Noble,* Montpelier, for Defendants.

**Billings, J.** This mortgage foreclosure action arises out of the purchase and sale of a printing business in Bradford. The Proctor Trust Company (the Bank) owned and operated the press during the time it was searching for a buyer, a period of eight months. The defendants purchased the business, claiming to have relied on two statements and projections of income, one prepared by Lyman Cousens, a former vice president of the Bank, who had left its employ at the time of the transaction, and the other by his successor, Alfred Leblanc. The evidence in the case is that these statements were highly misleading, being based on a period of untypically healthy cash flow, and making no adjustment for profitable business about to be lost.

The Bank brought its foreclosure action alleging that the defendants were in default on two mortgage notes in the total principal sum of $144,500 given in connection with the purchase and sale. The defendants counterclaimed, alleging fraud and deceit and two counts of breach of contract against the Bank and against the above named former and current officers as individuals. The two counterclaims alleging breach of contract were settled and dismissed by stipulation of the parties. V.R.C.P. 41(a) (1) (ii). The counterclaim alleging fraud and deceit was tried to a jury and resulted in a verdict for the defendants in the amount of $48,750 against the plaintiff bank alone. The trial court then issued a consolidated judgment granting plaintiff a decree of foreclosure but setting off against the principal amount due on the mortgage notes the

amount of the defendants' verdict on their counterclaim. The court further reduced the amount due the plaintiff by the costs incurred by the defendants in taking depositions in connection with their counterclaim. The judgment included interest on the net amount due, but did not provide for attorney's fees to the plaintiff.

The plaintiff made a timely motion to set aside the defendants' verdict and, in the alternative, for a new trial, which the trial court subsequently denied. From the consolidated judgment, the plaintiff, with permission, 12 V.S.A. § 4601, appealed, and the defendants filed a cross-appeal.

The plaintiff and defendants claim that the trial court erred in several particulars. The plaintiff claims that the defendants' verdict is inconsistent, and that the evidence viewed in the light most favorable to the defendants cannot support the verdict, *Weeks* v. *Burnor*, 132 Vt. 603, 609, 326 A.2d 138, 141–42 (1974). Plaintiff also claims that the trial court erred in its computation of interest, in allowing the defendants costs on their counterclaim, in not allowing plaintiff attorney's fees, in not striking the testimony of an expert witness on behalf of the defendants, and in not granting the plaintiff a personal judgment against the defendants on the notes.

The defendants claim that the trial court erred in not instructing the jury as to the elements of constructive fraud as distinguished from actual fraud, and in not allowing the jury to consider punitive damages if it found actual fraud involved.

█ The trial court was without error in denying plaintiff's motion for judgment notwithstanding the verdict, since the plaintiff failed to renew at the close of all of the evidence its earlier motion for a directed verdict. V.R.C.P. 50(b); *Palmisano* v. *Townsend*, 136 Vt. 372, 375, 392 A.2d 393, 395 (1978); *Houghton* v. *Leinwohl*, 135 Vt. 380, 381–82, 376 A.2d 733, 735–36 (1977).

█ Upon review of the record, however, it appears that the trial court manifestly abused its discretion in denying plaintiff's motion for a new trial after judgment. Plaintiff's liability rests on the doctrine of respondeat superior, and a principal cannot be held liable unless at least one of its agents

could be liable. The plaintiff can only act through its board of directors, officers, or agents. *Johnson* v. *Hardware Mutual Casualty Co.*, 108 Vt. 269, 286, 187 A. 788, 796 (1936). In the case at bar, the defendants counterclaimed against the plaintiff, one former vice president, and one current vice president. The jury returned a verdict exonerating both officers but holding the bank liable. A judgment may stand against a principal and at the same time exonerate an agent provided there is evidence allowing the jury to find that some other agent, although not a named defendant, acted for the corporation. *Waters* v. *Anthony*, 256 Ala. 370, 372, 54 So. 2d 589, 590–91 (1951). Thus if it were shown that Mr. Cousens and Mr. Leblanc believed in the accuracy of their figures and projections, but that other officers of the bank knew them to be wrong, the verdict against the Bank alone would be supported.

The defendants claim that there was evidence to show that both the board of directors and the president of the Bank participated in the alleged fraudulent activities, although not named as individual defendants. From a review of the record, it appears that, other than receiving figures on the actual monthly sales and expenses of the press, neither the board of directors nor the president had any knowledge of any projections or statements relative to future sales. Thus while the verdict is not inconsistent as a matter of law, there is no evidence in the record to support the liability of the Bank on the basis that any of its officers, aside from those exonerated by the jury verdict, participated in the alleged fraudulent activities. The plaintiff is entitled to a new trial.

█ Since this case must be remanded, we discuss each party's remaining claims of error for the guidance of the trial court. Plaintiff claims that the court erred when it instructed the jury that the expression of an opinion may be actionable fraud if made as part of a scheme to defraud. The plaintiff seasonably objected to this instruction. Normally, only representations of existing fact are actionable, and mere expressions of opinion cannot be the basis for an action of fraud. *Batchelder* v. *Birchard Motors, Inc.*, 120 Vt. 429, 433, 144 A.2d 298, 300 (1958). In *Harponola Co.* v. *Wilson*, 96 Vt. 427, 120 A. 895 (1923), however, this Court held that promises

are actionable if made as part of a scheme to defraud. This has become the well established law of this jurisdiction. See *Fayette* v. *Ford Motor Credit Co.*, 129 Vt. 505, 510–11, 282 A.2d 840, 843–44 (1971), and cases cited therein.

We see no reason to distinguish in this regard between false promises and false opinions. Where there is a conscious scheme to defraud, more is involved than expressions of "mere" opinion. The allegations in this case are that agents of the plaintiff allowed representations to be made which they knew were extremely likely to turn out to be false, in order to induce a sale of the business. The defendants allege more particularly that plaintiff's agents permitted income projections to be made which they knew to be based on highly unreliable data in order to realize more than a fair price for the printing business.

If the defendants can sustain their allegation of a scheme to defraud, these opinions or projections will closely resemble misrepresentations of existing fact. Defendants' reliance on the projections of future income proceeded from the Bank's familiarity with the state of the press' business affairs. If the Bank knew as a fact that a good deal of profitable business was about to be lost, the projections, based on a constant or an increasing amount of profitable business, in effect misrepresented the present state of the press' affairs.

▮ We thus hold that opinions are actionable where they are part of a scheme to defraud. This is consistent with the view taken by the Restatement of Torts § 525 (1938), which we quoted with approval in *Fayette* v. *Ford Motor Credit Co.*, *supra*, 129 Vt. at 511, 282 A.2d at 844.

> One who fraudulently makes a misrepresentation of fact, *opinion*, intention or law for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation. (Emphasis supplied.)

Accord, Restatement (Second) of Torts § 525 (1976).

▮ During trial, the plaintiff moved to strike the testimony of the defendants' expert witness, who gave his opinion

as to the value of the business as an operating entity based in large degree on a projected cash flow discounted to present value. The trial court denied the motion. The measure of damages for fraud is the difference between the actual fair market value of the property when purchased and the value it would have had at that time if as represented. *Donovan v. Towle*, 99 Vt. 464, 467, 134 A. 588, 589 (1926). Plaintiff claims that the testimony did not directly relate to the issue of fair market value. However, one of the approved methods of arriving at fair market value is a capitalization of income approach. *Record v. State Highway Board*, 121 Vt. 230, 240, 154 A.2d 475, 481 (1959). The expert testimony was relevant to this approach, and the trial court was without error in denying the motion to strike. The testimony related to damages resulting from the alleged fraud and was not immaterial. *Currier v. Letourneau*, 135 Vt. 196, 373 A.2d 521 (1977).

Plaintiff next claims that the trial court erred in that it increased the defendants' tort verdict by awarding interest from the time of injury. Unliquidated tort claims do not bear interest until the time of verdict. *Pettengill v. Kelton*, 124 Vt. 472, 475, 207 A.2d 245, 248 (1965). In the case at bar, however, the trial court did not award the defendants interest but rather set off the amount of the tort verdict against the principal amount of the notes as of the date written and then recomputed the interest thereon. The plaintiff was not entitled to interest on money that it had fraudulently. To hold otherwise would be inequitable.

Plaintiff claims that the trial court abused its discretion in allowing the defendants their actual costs incurred in taking depositions in connection with their counterclaim. V.R.C.P. 54(d) provides that costs shall be allowed as of course to the prevailing party unless the court otherwise directs. The only controverted issue in the case was the defendants' counterclaim based on fraud and deceit, and on that issue the defendants prevailed. The trial court was without error in awarding defendants their costs on this claim.

In addition, the plaintiff claims that the trial court abused its discretion in refusing to allow plaintiff reasonable

attorney's fees upon foreclosure, as provided for in the mortgage. The trial court, with neither notice of hearing nor hearing, failed to award any such fees in the consolidated judgment. V.R.C.P. 80.1(e) provides that reasonable attorney's fees claimed by the plaintiff under the mortgage shall be allowed, not exceeding two per cent, or a greater amount if expressly agreed upon in the mortgage or another instrument, unless the defendant objects, in which case a hearing with notice shall be scheduled.

The trial court has the inherent power to reduce fees if excessive, unconscionable, or unethical. V.R.C.P. 80.1, Reporter's Notes (1975). Initially, the trial court disallowed the fees without objection by defendants or hearing, thus failing to comply with the strict requirements of V.R.C.P. 80.1(e). In its motion to amend and alter the judgment, however, the plaintiff raised the issue of attorney's fees, and this issue was subsequently briefed and argued during the hearing on the motion. On this record, the lack of the initial objection and hearing is harmless error. The trial court did not abuse its discretion in denying attorney's fees where the jury had found the plaintiff chargeable with fraud and deceit.

 Finally, the plaintiff alleges error in that the trial court refused to grant a personal judgment on the notes against the defendants in addition to the judgment of foreclosure. V.R.C.P. 8(a) provides that a claim for relief shall contain a demand for the relief to which a party deems himself entitled. None of the plaintiff's pleadings requested this relief, and although the parties stipulated that the plaintiff "may amend its complaint for foreclosure to demand a judgment at law for the amount due on the promissory notes," the plaintiff elected not to take such action. Plaintiff relies on *Kelly* v. *Rhodes*, 136 Vt. 534, 396 A.2d 130 (1978), claiming that when the parties have stipulated to the issues to be decided they are bound by their stipulation. The plaintiff's reliance on *Kelly* is misplaced, since in that case the parties actually stipulated to broaden the relief requested. Here, the plaintiff was given permission to seek such relief, but then did not ask for it. The trial court was without error in denying relief on plaintiff's subsequent motion.

354

■ Turning to the cross-appeal, the defendants first claim that the trial court erred in refusing to instruct the jury on the elements of constructive fraud. "Fraud" has different meanings. "Actual fraud" is deceitful misrepresentation or concealment with evil intent, while "constructive fraud" is wrongdoing without bad faith. *Kendall's Admr.* v. *Roseberry*, 120 Vt. 498, 502, 144 A.2d 836, 838 (1958). On the record before us, the trial court erred in failing to charge the different levels of intent.

■ Secondly, the defendants claim error in that the trial court instructed the jury that they could not consider the issue of punitive damages. Actual fraud is accomplished with an evil intent, *id.*, and if a jury finds that actual fraud was committed, an injured party is entitled to have the jury consider punitive or exemplary damages. It was error for the trial court to take the issue of punitive damages from the jury's consideration. *Nye* v. *Merriam*, 35 Vt. 438, 446 (1862).

*Reversed and remanded for a new trial consistent with the views expressed in the opinion. Each party shall bear its own costs.*