2009 VT 9

# Teresa DeYoung, Abigayle DeYoung, Tristan DeYoung, Nathaniel DeYoung and Trevor DeYoung v. John M. Ruggiero, Esq. and The Law Office of John M. Ruggiero

[971 A.2d 627]

No. 06-357

Present: Dooley, Johnson, Skoglund and Burgess, JJ., and Kupersmith, D.J., Specially Assigned

Opinion Filed January 30, 2009

*James A. Dumont* of *Law Office of James A. Dumont, PC,* Bristol, for Plaintiffs-Appellants.

*Robert F. O'Neill* and *Ross A. Feldmann* of *Gravel and Shea,* Burlington, for Defendants-Appellees/Cross-Appellants.

¶ 1. **Dooley, J.** This is an action by clients (hereinafter plaintiffs) against a lawyer who misappropriated funds belonging to the clients. The complaint sought the funds, additional compensatory damages, and punitive damages on multiple theories. The lawyer failed to answer the complaint, and the superior court entered a default judgment in favor of plaintiffs. Thereafter, the court held a trial on damages, and a jury awarded plaintiffs a limited amount of compensatory damages but no punitive damages. On appeal, plaintiffs contend that the court erred by: (1) granting them a default judgment rather than summary judgment, particularly on the question of whether defendant's[1] conduct demonstrated malice; (2) allowing the jury to decide whether they had demonstrated malice on defendant's part; (3) not striking defense counsel's prejudicial statements regarding malice during closing argument;

---

[1] For ease of reading, the two defendants, John Ruggiero, Esq. and the Law Office of John M. Ruggiero, Esq., will be referred to, in the singular, as defendant.

(4) refusing to grant them a new trial based on the jury's finding of no malice; (5) refusing to instruct the jury that damages were available to them for insult, indignity, and humiliation resulting from defendant's intentional breach of a fiduciary duty; (6) refusing to award them costs incurred after defendant made a lump-sum settlement offer to all of the plaintiffs; and (7) ruling, as a matter of law, that consideration under the Consumer Fraud Act (CFA), upon which treble damages would be based, was the fee defendant said he would have charged them rather than the money he misappropriated from them. Defendant cross-appeals, arguing that, in awarding attorney's fees, the superior court erred by not considering plaintiffs' rejection of his settlement offers and by not comparing the total damage award plaintiffs sought with the amount the jury actually awarded them. We conclude that the element of malice was demonstrated as a matter of law in this case. Accordingly, we reverse the judgment in part and remand the matter for the jury to determine how much in punitive damages, if anything, to award plaintiffs. The only other issues we address are those that remain relevant in light of our remand on punitive damages.

¶ 2. Plaintiffs are a widow (mother) and her four children. In July 2001, shortly after mother's husband committed suicide in Massachusetts, where the family was living, mother and the children moved to Vermont to be near mother's parents. Mother hired defendant, a successful real estate attorney, to close on her purchase of a home in Vermont. In early 2002, mother's mother-in-law died and left a substantial inheritance for mother's children. Because husband's suicide had resulted in a complete breakdown in communication between mother and husband's family, mother hired defendant to ensure that her children would receive their inheritance from their grandmother's estate.

¶ 3. Defendant advised mother to invest the estate funds in his real estate business once they were acquired, but she rejected this advice. Nonetheless, in July 2002, shortly after receiving a partial distribution of $300,000 from the estate and setting up a trust account for the funds, defendant transferred the funds into his own account and used the money over the next two and one-half years for his real estate business, without informing plaintiffs that the funds had been received. Some nine months later, in April 2003, defendant received a final distribution of approximately $109,000 and paid these amounts to plaintiffs without disclosing the earlier distribution.

¶ 4. From the time mother hired defendant, she made repeated inquiries as to when the funds would be available, and defendant lied to her to cover up his theft of the funds, telling her that there were problems getting the funds out of the probate estate. Partly because they were unable to access the entire estate funds, some of the children had to change their college plans and attend less expensive institutions that were closer to home.

¶ 5. At the end of 2004, mother renewed communications with her Massachusetts in-laws and learned the estate had made the $300,000 payment to the children in 2002. Plaintiffs filed suit against defendant in January 2005, bringing claims for willful breach of fiduciary duties, misrepresentation, misappropriation, negligence, breach of contract, and deceptive acts in violation of the CFA. At the same time, disbarment proceedings were commenced against defendant. In those proceedings, defendant filed an affidavit with the Professional Responsibility Board admitting that he "misused for my own benefit and contrary to the entitlement of my clients . . . funds . . . delivered to me in trust for distribution to estate beneficiaries . . . [totaling] approximately $300,000." Following his disbarment, defendant paid plaintiffs $300,000, along with attorney's fees and interest. He never, however, filed an answer in this case.

¶ 6. Meanwhile, plaintiffs moved for summary judgment, attaching a statement of undisputed facts, mother's affidavit, and defendant's affidavit to the Board. In response, defendant asserted that plaintiffs were seeking summary judgment rather than a default judgment to obtain more attorney's fees from him. Defendant asked the court to enter a discretionary default judgment against him pursuant to Rule 55 of the Vermont Rules of Civil Procedure.

¶ 7. The court granted defendant's motion and denied that of plaintiffs. The court reasoned that entry of default judgment "offer[ed] an expedient resolution on the question of liability." The court noted that plaintiffs had not agreed to entry of default judgment only because they feared that a default judgment would not allow them to have a jury trial on damages. Finding that entry of default judgment would not bar a jury hearing on damages, and that plaintiffs were entitled to such a hearing, the court granted defendant's motion for a default judgment and held a damages hearing.

¶ 8. Following the close of evidence at the damages hearing, the court held a charge conference in chambers to discuss the issue of malice as it related to common-law and consumer-fraud punitive damages. Plaintiffs' position was that the default judgment entered against defendant determined the presence of malice as a matter of law and precluded the submission of the issue of malice to the jury. In the alternative, plaintiffs argued that they had submitted sufficient evidence of malice, as a matter of law, to require an award of punitive damages. The court rejected these arguments and instructed the jury that plaintiffs "must establish that [defendant] acted with malice" before the jury could award punitive damages. Towards that end, the jury was given special interrogatories in response to which they first were to indicate whether defendant had acted with malice, and second, if so, indicate what amount of punitive damages, if any, they would award.

¶ 9. At the charge conference, plaintiffs also asked the court to instruct the jury that if they were able to establish that defendant had injured them, they were entitled to damages for emotional harms, and specifically for insult, indignity, humiliation, or injury to feelings. The court refused to give plaintiffs' proposed instruction and instead charged the jury that plaintiffs could be awarded damages for emotional harms suffered, but did not refer to the specific harms enumerated by plaintiffs.

¶ 10. At the charge conference, plaintiffs' counsel withdrew plaintiffs' count alleging that defendant violated the CFA, but only after agreeing with defense counsel that plaintiffs could obtain an award of attorney's fees as if liability were based on the CFA. The withdrawal occurred after plaintiffs' counsel concluded that the court would rule against plaintiffs on an issue involving the construction of the punitive-damages provision of the CFA, 9 V.S.A. § 2461(b). The anticipated ruling is described in greater detail in ¶¶ 38-39, *infra*.

¶ 11. During closing argument, defense counsel emphasized the need for the jury to find malice predicated on a showing of bad motive. In responding to examples of obvious malice proffered by plaintiffs' attorney, defense counsel reminded the jury that the court had not instructed them that defendant's actions demonstrated malice as a matter of law. When plaintiffs objected to this comment, the court told the jury that "the issue of malice is going to be submitted to the jury" although "it may have been found by

a Court in other circumstances." Defense counsel then reiterated to the jury that "if there hasn't been a showing of malice, then you don't analyze the punitive damages."

¶ 12. During its deliberations, the jury submitted questions to the court concerning perceived inconsistencies in the definition of malice set forth in the court's charge, which was taken from our case law. After discussing with counsel how to respond, the court read parts of *Brueckner v. Norwich University*, 169 Vt. 118, 730 A.2d 1086 (1999), to the jury to clarify its instruction. In so doing, the court acknowledged the jury's apparent confusion over the words "reckless" and "recklessness" as they related to the concept of malice, and attempted to distinguish the two terms.

¶ 13. Ultimately, the jury awarded $5000 to mother and $1000 to each child in unreimbursed compensatory damages, but indicated by special interrogatory that it did not find malice and thus did not award plaintiffs any punitive damages. Plaintiffs moved for the judgment to be set aside under Rules 52, 55, 59, and 60 of the Vermont Rules of Civil Procedure. The court rejected plaintiffs' motion, ruling, in part, that the default judgment entered against defendant did not decide the issue of malice in plaintiffs' favor. The court reasoned that: (1) this was not an ordinary default judgment in that defendant himself moved for default; (2) the court had broad discretion to allow evidence on elements of a claim following entry of default judgment; and (3) the policy interests underlying default judgments and the role of the jury in determining punitive damages favored submitting the question of malice to the jury.

¶ 14. The court also addressed the parties' claims concerning costs and attorney's fees. Defendant argued that because plaintiffs had rejected his settlement offers and because the offers exceeded the aggregate amount eventually awarded to them, V.R.C.P. 68 precluded them from recovering attorney's fees under the CFA. Rule 68 states in pertinent part that "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Ruling that Rule 68 applied only to monies defined by statute as costs, the court granted plaintiffs' motion for attorney's fees in the amount they requested. The court applied Rule 68 to plaintiffs' request for costs, however, limiting their recovery to costs accrued before defendant's offer of judgment. This appeal and cross-appeal followed.

274

¶ 15. On appeal, plaintiffs first argue that the superior court erred by entering a default judgment rather than granting their motion for summary judgment. According to plaintiffs, summary judgment was mandatory under Rule 56(c)(3) because defendant did not oppose by affidavit, as required by the rule, any of their claims on the merits, including their claim that defendant's willful and wanton conduct was sufficient to support an award of punitive damages. On this point, we conclude that the superior court acted well within its discretion in granting a default judgment rather than summary judgment. Cf. *Dougherty v. Surgen*, 147 Vt. 365, 366, 518 A.2d 364, 365 (1986) (noting that denial of motion to vacate default judgment will be reversed on appeal only upon showing of trial court's abuse of discretion).

■ ■ ¶ 16. Plaintiffs sought summary judgment because they wanted a judgment on the merits and a jury trial on damages with respect to defendant's allegedly outrageous conduct. They received both. "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Further, as the trial court ruled, entry of default judgment did not preclude plaintiffs from obtaining a jury trial on damages. Thus, the superior court did not abuse its discretion by entering a default judgment based upon defendant's concession to a judgment on liability, which effectively rendered plaintiffs' summary judgment motion moot. Cf. *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (declining to review "unusual" entry of summary judgment following trial court's proper entry of default judgment).

¶ 17. Plaintiffs' reason for raising this argument now is their apparent belief that the summary judgment motion, if granted, would have entitled them to at least some amount of punitive damages, even if the default judgment did not. Yet, in asking the trial court for summary judgment rather than default judgment, plaintiffs never explicitly claimed that it would make a difference as to the availability of punitive damages. We conclude that the slight differences in wording between the requested summary judgment and the default judgment would not have caused a different result.

¶ 18. We also reject plaintiffs' argument that the default judgment entered by Judge Cohen decided the malice issue in their

favor, thereby precluding the jury from reaching the issue. In his order, Judge Cohen stated that the only facts that were disputed by defendant related to the extent of punitive damages and did not prevent the court from entering a default judgment as to liability. In so ruling, the judge emphasized that "[t]he issue of damages is not before the court at this time." Accordingly, the judge set the matter for a "jury determination of the appropriate amount of damages."

¶ 19. Seizing upon the phrase "appropriate level of damages," plaintiffs argue that the court's order determined liability as to punitive damages by accepting as true their allegation of defendant's willful and wanton conduct. According to plaintiffs, the court intended for a jury to determine only the amount of punitive damages, and not whether punitive damages were appropriate in this case. We conclude that plaintiffs read too much into Judge Cohen's order. Nothing in the order suggests that the court intended to rule that plaintiffs were entitled to an award of punitive damages. To the contrary, the order merely states that liability in general was proven, and that damages would be considered by a jury at a later hearing.

¶ 20. Plaintiffs argue, however, that even if Judge Cohen's order did not establish malice as a matter of law, the superior court erred in denying their motion for a new trial under Rule 59, in which they claimed that the jury's finding of no malice was not supported by any evidence. Conceding that the jury could have declined to award punitive damages even if it had found malice, plaintiffs did not file a motion for judgment notwithstanding the verdict, but rather argued that they were entitled to a new trial on damages because of the absence of any evidence supporting the jury's finding of no malice. In denying plaintiffs' Rule 59 motion, the trial court stated simply that its discretion was limited because it had to give presumptive weight to the jury's verdict. We review that ruling. See 9B C. Wright & A. Miller, Federal Practice & Procedure § 2531, at 478-79 (3d ed. 2008) ("The failure to seek a judgment as a matter of law at the close of all the evidence does not procedurally bar a motion for a new trial, but it does bar a renewed motion for judgment as a matter of law."); *Vieau v. City & County of Honolulu*, 653 P.2d 1161, 1165 (Haw. Ct. App. 1982) ("[D]espite the lack of a motion for a directed verdict, the denial of defendants' Rule 59(a) motion for a new trial is reviewable by this court"); see also *Proctor Trust Co. v. Upper*

*Valley Press, Inc.*, 137 Vt. 346, 349-50, 405 A.2d 1221, 1223-24 (1979) (upholding trial court's denial of plaintiff's motion for judgment notwithstanding the verdict because of plaintiff's failure to renew motion for directed verdict following close of evidence, but concluding that court abused its discretion in denying plaintiff's motion for new trial based on absence of evidence demonstrating that plaintiff engaged in fraudulent activities); *Houghton v. Leinwohl*, 135 Vt. 380, 381-82, 376 A.2d 733, 735-36 (1977) (concluding that appellant waived his right to file motion for judgment notwithstanding the verdict, but timely filed Rule 59 motion for new trial based on insufficient evidence of negligence and causation).

¶ 21. Before addressing the merits of that ruling, however, we note that the malice issue was at the heart of the parties' dispute at the damages hearing. Defendant's principal defense to punitive damages was that he had not acted with malice, and that plaintiffs had failed to demonstrate that he had acted with malice. Defendant's testimony and defense counsel's closing argument emphasized these points. Because of plaintiffs' position that malice existed as a matter of law, their proposed jury charge listed the relevant factors for the jury to consider in determining punitive damages, but did not include a threshold question on whether malice existed. The court declined to exclude the threshold malice question, however, and the parties' attorneys engaged the court in a vigorous debate about how to charge malice. During deliberation following the charge, the jury asked several questions concerning the meaning of malice and the perceived discrepancies in the definition of malice set forth in the court's instruction. Ultimately, the jury indicated in response to a special interrogatory that there was no malice and thus did not weigh the relevant factors to determine how much, if anything, to award plaintiffs in punitive damages.

■ ¶ 22. Upon review of the record in this case, we conclude that the evidence manifestly demonstrated malice on defendant's part, and thus the trial court should have granted plaintiffs' motion for a new damages hearing, one in which the jury would not be charged with finding malice. Although the default judgment on liability did not entitle plaintiffs to an award of punitive damages, it served as a basis for such an award. Because plaintiffs obtained a default judgment, "the factual allegations of the[ir] complaint, except those relating to the *amount* of damages, will

be taken as true." 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2688, at 58-59 (3d ed. 1998) (emphasis added); accord *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Beck v. Atlantic Contracting Co.*, 157 F.R.D. 61, 64 (D. Kan. 1994). Indeed, "all well-pled claims including those supporting liability for punitive damages are deemed admitted and supported by evidence, and punitive damages may be awarded in a case of default judgment." *Wilson Welding Serv. v. Partee*, 507 S.E.2d 168, 170 (Ga. Ct. App. 1998).

¶ 23. Here, plaintiffs' complaint contained the following allegations. When mother hired defendant to obtain estate funds earmarked for her children following their father's suicide and their grandmother's death, defendant unsuccessfully tried to persuade mother to invest the funds in his real estate business as they became available. Even though mother declined this offer, defendant transferred $300,000 of estate funds he received into his own account to support his business, without informing plaintiffs that he had received the funds. Mother called defendant regularly about the status of the funds, but defendant deceived her by saying that the funds were tied up in probate or were otherwise not available. Defendant's theft of the funds and deceit about their availability continued for over two years, until mother learned that the funds had been sent to defendant for the children years earlier. Defendant did not dispute any of these facts, contending only — and not by affidavit — that he was not aware of the children's needs for the funds, as mother claimed. In short, the undisputed facts demonstrated that defendant was a lawyer who breached his fiduciary duty to vulnerable clients recovering from the loss of a family member by stealing their money and then lying about it over a period of years until the clients discovered the theft.

¶ 24. Although plaintiffs did not explicitly allege malice in their complaint, they contend that their allegations, which were not disputed in any significant sense at the damages hearing, demonstrate malice as a matter of law.[2] In considering this

---

[2] We note that this Court has suggested, but never explicitly held, that the jury determines whether malice exists as a question of fact. See *Gaylord v. Hoar*, 122 Vt. 143, 148, 165 A.2d 358, 362 (1960) (noting that punitive damages may be awarded in action for conversion characterized by malice or reckless and wanton disregard of plaintiffs' rights, and further stating that question of existence of

contention, we first examine our law on the elements of malice. To demonstrate the malice necessary to establish liability for punitive damages, one must show "conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights." *Brueckner*, 169 Vt. at 129, 730 A.2d at 1095 (internal quotes omitted). In recent cases, we have emphasized that, in addition to a showing of illegal, wrongful, or reckless conduct, there must be some evidence of bad motive on the defendant's part to establish malice and support an award of punitive damages. *Id.* at 130, 730 A.2d at 1096; see also *Bolsta v. Johnson*, 2004 VT 19, ¶¶ 5, 7, 9, 176 Vt. 602, 848 A.2d 306 (mem.) (holding that reckless conduct of drunken driver, without additional evidence of personal ill will or bad motive, was insufficient to establish malice per se and support award of punitive damages). This emphasis on bad motive has been a source of confusion, as evidenced by the jury's response to the trial court's charge in this case.

¶ 25. On the one hand, as indicated above, our longstanding definition of malice has included not only "conduct manifesting personal ill will" but also "conduct showing a reckless disregard to the rights of others." *Bolsta*, 2004 VT 19, ¶ 5. On the other hand, we also require some evidence of "bad motive," which could be interpreted as personal ill will or, at minimum, some indication of bad faith beyond a willful violation of the law or a reckless disregard of the rights of others. *Id.* ¶¶ 5, 7. This is the discrepancy that confused the jury in this case and caused the

---

reckless and wanton disregard of plaintiffs' rights is one of fact for the jury). Some jurisdictions hold that the trial court initially determines whether malice exists, and, if the court finds malice, the jury determines the amount of punitive damages. See, e.g., *Cent. Office Tel., Inc. v. Am. Tel. & Tel. Co.*, 108 F.3d 981, 994 (3d Cir. 1997) (noting that, under Oregon law, "the judge determines whether there is evidence of malice as a matter of law, and if he decides there is, the assessment of damages is committed to the jury's discretion"); *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 887 (Nev. 1999) (stating that trial court has responsibility "to determine whether, as a matter of law, the plaintiff has offered substantial evidence of malice in fact to support a punitive damages instruction" (quotation omitted)). Most courts, however, hold that the jury, as the finder of fact, determines whether malice exists. See, e.g., *Lindquist v. Friedman's, Inc.*, 8 N.E.2d 625, 628 (Ill. 1937) (stating that "question of malice is one of fact for the jury"); *Dahlen v. Landis*, 314 N.W.2d 63, 69 (N.D. 1981) (stating that question of malice is one primarily "for the jury"). In this case, neither party raises this issue, but instead both presume that the jury ordinarily makes this determination. Given that the parties have not raised this issue, we do not reach it.

trial judge to attempt to explain to the jury the difference between the words "reckless" and "recklessness."

■ ¶ 26. Our case law is consistent in this area only if we acknowledge that "bad motive" does not arise exclusively from "personal ill will" toward a particular person. Although malice is perhaps most often found when "the defendant's tortious conduct is motivated by ill will toward the plaintiff," it may also be found when the defendant engages in deliberate and outrageous conduct that is not necessarily motivated by ill will toward any particular person. *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985); see also *Preston v. Murty*, 512 N.E.2d 1174, 1175 (Ohio 1987) (stating that malice can be found based upon either "behavior characterized by hatred, ill will, or a spirit of revenge" or "extremely reckless behavior revealing a conscious disregard for a great and obvious harm").

■ ¶ 27. Thus, malice may arise from deliberate and outrageous conduct aimed at securing financial gain or some other advantage at another's expense, even if the motivation underlying the outrageous conduct is to benefit oneself rather than harm another. Cf. *Proctor Trust*, 137 Vt. at 354, 405 A.2d at 1226 ("Actual fraud is accomplished with an evil intent, . . . and if a jury finds that actual fraud was committed, an injured party is entitled to have the jury consider punitive or exemplary damages."); *Nye v. Merriam*, 35 Vt. 438, 446 (1862) (stating "that wilful fraud, as well as malice, may be punished by exemplary damages in an action of tort"). This is particularly true when attorneys defraud their clients. When an attorney defrauds a client for financial gain, "it evidences a total disregard for the existing fiduciary relationship," making "an award of punitive damages . . . likely if sought." 2 Punitive Damages: Law & Practice § 17:11, at 17-29 (2d ed. 2001). Many cases illustrate this principle. See, e.g., *Oliver v. Towns*, 770 So. 2d 1059, 1061-62 (Ala. 2000) (upholding punitive-damages award where attorney committed the "particularly reprehensible act" of misappropriating proceeds of client's settlement check); *Ball v. Posey*, 222 Cal. Rptr. 746, 750 (Ct. App. 1986) (concluding that jury acted with restraint in awarding $40,000 in punitive damages based upon attorney's conversion of client funds); *Thomas v. White*, 438 S.E.2d 366, 367-68 (Ga. Ct. App. 1993) (allowing punitive-damages award upon showing of attorney's willful and knowing deception as to reason for dismissal of client's

case); *Hill v. Montgomery*, 84 Ill. App. 300 (1899) (stating that case in which attorney gave client false information, thereby causing her harm, "is one calling for punitive damages"); *Harmening v. Howland*, 141 N.W. 131, 133 (N.D. 1913) (stating that attorney's willful and deceitful conduct toward client was sufficient to impose punitive damages).

■ ¶ 28. In cases involving wrongdoing by a fiduciary such as a lawyer, courts have stressed that malice arises when the attorney intentionally makes false statements to a client to obtain some personal gain. In *Thomas*, for example, the attorneys were alleged to have intentionally and fraudulently misinformed their client about their failure to file for a jury trial in order to insulate themselves from suit and protect their financial well-being. The court found, on the basis of this behavior, clear and convincing evidence of malice. *Thomas*, 438 S.E.2d at 367-68. In another case with facts similar to the instant case, the court awarded significant punitive damages to the clients of an attorney who appropriated estate funds entrusted to her. See *Fulton v. Gavlick*, 63 Pa. D. & C. 4th 250, 264-67 (Pa. Ct. Comm. Pleas 2003).

■ ¶ 29. In this case, although defendant acknowledges stealing plaintiffs' money and then lying to them about the theft for years notwithstanding his fiduciary duty to them, he contends that the jury could reasonably have found no malice because (1) he did not intend to harm them, and (2) he always intended to return the money to them sooner rather than later. We conclude that even if the jury accepted this explanation entirely, defendant's fraudulent conduct demonstrated bad motive and malice. Defendant's admitted motive was to enrich himself and promote the interests of his company, which in and of itself demonstrates a bad motive. Cf. *Sweet v. Roy*, 173 Vt. 418, 445-46, 801 A.2d 694, 714 (2002) (finding that defendants' conduct aimed at gaining ownership of homes in mobile home park at unreasonably low prices "was particularly reprehensible and warranted a large punitive damage award"); *Fulton*, 63 Pa. D. & C. 4th at 265-66 (awarding punitive damages based on attorney's theft of client funds motivated by attorney's desire to maintain her lifestyle in face of financial problems). To find malice, the jury was not required to determine that defendant's motive in stealing plaintiffs' estate funds was to harm them rather than enrich himself. If that were the case, punitive damages would never be available against companies that, for

example, knowingly placed dangerous products into the market, hoping that people would not get hurt, but willing to ignore a great risk of harm to increase profits.

¶ 30. Based on the state of the evidence in this case, the trial court could have found malice as a matter of law. See V.R.C.P. 50(a)(1) ("If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law . . . ."); cf. *Dependable Ins. Co. v. Kirkpatrick*, 514 So. 2d 804, 806 (Ala. 1987) (finding that defendant's conversion of property demonstrated malice as a matter of law sufficient to justify punitive damages); *Anderson v. Int'l Harvester Co. of Am.*, 116 N.W. 101, 102 (Minn. 1908) (noting that authorities very generally permit recovery of punitive damages when manner of commission of tort justifies "inference of malice as a matter of law"). Defendant was "fully heard" on his claim that there was no malice, but his position lacked the requisite evidentiary support, in light of the record demonstrating his intentional course of wrongdoing, committed with conscious and deliberate disregard for plaintiffs' rights, and pursuant to an illegitimate motive. In such circumstances, malice existed as a matter of law, and thus the jury could not have declined to award punitive damages based on the absence of malice. In the absence of a motion for a directed verdict, the court should have granted plaintiffs' post-hearing motion for a new trial based on the complete absence of evidence to support the jury's finding of no malice. Accordingly, we reverse and remand for the jury to consider the proper amount of punitive damages, if any, without requiring them to make the threshold determination of whether malice existed.

¶ 31. We do not reach this determination lightly. We recognize that a trial court considering a Rule 59 motion claiming insufficient evidence to support a jury verdict must view the evidence most favorably to the verdict, and, further, that the trial court's denial of such a motion will be reversed only upon a showing of a clear abuse of discretion. *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 21, 181 Vt. 513, 928 A.2d 497; *Brueckner*, 169 Vt. at 132-33, 730 A.2d at 1097; see also *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 656-57 (8th Cir. 1995) (trial court's denial of motion for new trial based on claim that jury verdict was against weight

of evidence will be reversed only when there is absolute absence of evidence to support verdict, assuming that trial court weighed evidence based on proper legal standard). Nevertheless, because of the arguable lack of clarity in our case law regarding the meaning of malice, and the fact that the evidence overwhelmingly demonstrated malice on defendant's part, this is one of the rare cases in which we are obliged to take such action.

¶ 32. We also emphasize that the jury still retains full discretion to award any amount of punitive damages to plaintiffs, including none at all. See *Bruntaeger v. Zeller*, 147 Vt. 247, 254, 515 A.2d 123, 127 (1986) (stating that under ordinary civil law, "an award of exemplary damages is discretionary with the fact finder even where malice is present"). Indeed, "[u]pon the clearest proof of malice in fact, it is still the exclusive province of the jury to say whether or not punitive damages shall be awarded." *Brewer v. Second Baptist Church of Los Angeles*, 197 P.2d 713, 719-20 (Cal. 1948) (quotation omitted); see also *Van Lom v. Schneiderman*, 210 P.2d 461, 469 (Or. 1949) ("[T]he jury has entire discretion to refrain from giving any punitive damages at all even though all the elements of malicious and damaging misconduct may have been established."). The decision whether to award punitive damages in a civil trial against a defendant represents an area of unparalleled discretion on the part of a jury in a civil trial. Our decision today in no way limits the scope of that discretion. "A plaintiff is entitled to such damages only after the jury, in the exercise of its untrammeled discretion, has made the award." *Brewer*, 197 P.2d at 720 (quotation omitted).

¶ 33. Having determined the main issue in the case favorably to plaintiffs, we now turn to the others. One issue on appeal — whether the offer of judgment precluded the award of costs — and the cross-appeal issue — whether the offer of judgment and plaintiffs' limited success precluded the award of attorney's fees, at least in the amount ordered by the court — are now moot because the amount of plaintiffs' recovery is unknown. Therefore, we do not reach those issues. We do reach, however, plaintiffs' argument that the trial court erred in failing to present to the jury all the categories of damages to which plaintiffs were entitled. As detailed below, we also address plaintiffs' argument that the court improperly determined the amount of punitive damages that the jury could award under the CFA, but we conclude that there is no trial court ruling we can review.

¶ 34. We start with plaintiffs' arguments concerning the court's instructions to the jury on damages for emotional harm. Plaintiffs argue that the court erred in not instructing the jury that plaintiffs could recover compensatory damages for insult, humiliation, and indignity. Plaintiffs submitted a request to charge on this point and argued for its inclusion at the charge conference. After much discussion, the court rejected plaintiffs' language and instead instructed the jury, in pertinent part, that: "[t]hese damages could include an amount to compensate [plaintiffs] for any emotional harm or anguish that they have suffered as a result of the activity complained of and to compensate for any lost educational opportunity."

¶ 35. Plaintiffs' argument is based almost entirely on this Court's decision in *Rogers v. Bigelow*, 90 Vt. 41, 96 A. 417 (1916). *Rogers* is a civil assault and battery case in which the issue was whether plaintiff had to specially plead mental suffering in order to recover damages for that element. In the course of deciding that issue, the Court noted: "in actions for intentional wrongs, such as trespass for assault and battery, damages are recoverable for mental suffering consisting in a sense of insult, indignity, humiliation or injury to the feelings." *Id.* at 46, 96 A. at 419. Plaintiffs rely on that language to argue that the trial court had to instruct that emotional injury includes humiliation, indignity and insult.

¶ 36. We assume that the *Rogers* description is applicable to this action for intentional misappropriation of funds, but nonetheless stress that *Rogers* says nothing about what a court must include in a charge to the jury. Our rule is that the court can select its own language in crafting the charge, *Weaver v. Brush*, 166 Vt. 98, 107, 689 A.2d 439, 445 (1996), and "the degree of elaboration lies within [the] sound discretion" of the trial judge, *Knapp v. State*, 168 Vt. 590, 591, 729 A.2d 719, 720 (1998) (mem.). We review to determine whether the instructions convey the "true spirit and doctrine of the law." *John A. Russell Corp. v. Bohlig*, 170 Vt. 12, 19, 739 A.2d 1212, 1218 (1999).

¶ 37. Plaintiffs do not argue that the instructions the court gave were inaccurate or misleading. The argument is entirely that the court should have elaborated by using the *Rogers* language. After hearing extensive discussion at the charge conference, the presiding judge decided to leave the elaboration to argument of

counsel in the closing arguments. We conclude that the court acted within its discretion, and its instructions must be affirmed under our standard of review.

¶ 38. Plaintiffs also ask us to review a ruling of the court, which also came in the charge conference, with respect to damages under the CFA. The complaint charged that defendant had violated the CFA, and plaintiffs sought punitive damages and attorney's fees under 9 V.S.A. § 2461(b) for this violation. The statutory section provides:

> Any consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices . . . , or who sustains damages or injury as a result of any false or fraudulent representations or practices . . . may sue for appropriate equitable relief and may . . . recover . . . the amount of his damages, or the consideration or the value of the consideration given by the consumer, reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by the consumer.

9 V.S.A. § 2461(b). The parties disputed the meaning of the term "the value . . . given by the consumer" in the clause providing for exemplary damages. It was undisputed that plaintiffs had paid defendant nothing for his services and that there was no contract establishing defendant's fee or the method of its calculation. Defendant argued that the "value given by the consumer" was the amount that he would have charged plaintiffs, and that the jury could determine that amount from his testimony. Plaintiffs apparently[3] argued that the jury could consider at least part of the money defendant misappropriated as "value given by the consumer."

¶ 39. We have commented in other decisions that it is difficult to find reviewable rulings in charge conferences. See *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 137-38, 636 A.2d 744, 750 (1993). This case is a good example. In their brief, plaintiffs argue that they had "orally requested a charge allowing the jury to

---

[3] We have said "apparently" because plaintiffs' theory is not clear. Plaintiffs seemed to argue at one point that defendant would have kept a third of the recovery, but in their brief they argue that embezzled funds are treated for income tax purposes as income "and the remedial purpose of the Consumer Fraud Act requires the same treatment here."

decide the value of the consideration . . . and objected to the jury charge that this had been taken from the jury" because the "court ruled that the consideration was only the amount Mr. Ruggiero said he would have charged for his time." Although we cannot determine this conclusively because there was no definitive ruling by the trial judge, we doubt that the trial judge would have ruled as a matter of law what the value given by plaintiffs was for purposes of § 2461(b).[4] It does appear, however, that the trial judge was likely to craft an instruction that favored defendant's, and not plaintiffs', definition of "value," but again the events never reached that stage, and no specific charge language was considered. When plaintiffs' counsel saw that the issue was not likely to be resolved in his favor, he withdrew the count charging a violation of the CFA, first from consideration of punitive damages and then from consideration of compensatory damages. In return, defendant agreed that plaintiffs could recover attorney's fees under § 2461(b) as if liability was determined under the CFA.

¶ 40. Plaintiffs argue that we should reach the issue because they preserved it through an objection under V.R.C.P. 51(b) after the charge was delivered. The objection was irrelevant, however, because by the time it was given the CFA was out of the case and the charge never mentioned the CFA. Plaintiffs' problem is not with the absence of an objection, but with the absence of a definitive ruling that we can review. Ordinarily, we would review a ruling such as this that could reemerge on remand, but, for the reasons stated above, we cannot do so with respect to this issue.

*Reversed and remanded for further proceedings in accordance with this opinion.*

---

[4] The judge said in the charge conference that he was still "debating in my mind whether I have the jury decide," but shortly thereafter said "I think I'll charge the jury that in this case the consideration would be . . . guided by the fee charged."