Filed 12/04/25

VERMONT SUPERIOR COURT  CIVIL DIVISION
Chittenden Unit                                          Case No. 23-CV-1000
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org

| | |
|---|---|
| SARA CLARK and ROBERT CLARK, Individually, and as Executors of the Estate of ALICE CLARK, <br>        Plaintiffs <br><br>        v. <br><br> KAG MERCHANT GAS GROUP, LLC, THE KENAN ADVANTAGE GROUP, INC., DALE R. DELORME, and NG ADVANTAGE, LLC, <br>        Defendants | DECISION ON MOTIONS |

## RULING ON PENDING MOTIONS

This wrongful death and survival action arises from a motor vehicle crash that resulted in the death of Plaintiffs' young daughter. Plaintiffs Sara and Robert Clark allege that Defendants were negligent in maintaining, inspecting, servicing, and operating the tractor trailer that crashed into their minivan. They also seek punitive damages. Defendants have moved for summary judgment solely on Plaintiffs' punitive damages claim.[1] Plaintiffs ask the Court to deny or defer ruling on the summary judgment motion until additional discovery can be obtained, pursuant to Rule 56(d). Defendants also seek two protective orders regarding Plaintiffs' attempt to depose some of Defendants' corporate officials and the proposed Rule 30(b)(6) corporate deposition. The Court heard oral argument on the motions on Wednesday, November 19, 2025.

After oral argument, the Court indicated that it disagreed with Defendants' view on Vermont's law of punitive damages, and that Plaintiffs' theory of the case could support punitive damages if proven. The Court further indicated that it would grant the Rule 56(d) motion to allow additional discovery, deny the motions for protective orders, and follow up with a brief written order.

## Discussion

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations, or to take discovery; or (3) issue any

---

[1] Defendant NG Advantage had also moved separately for summary judgment (Mot. #18), but that motion is now moot because the parties have recently settled Plaintiffs' claims against NG Advantage.

other appropriate order." V.R.C.P. 56(d). Plaintiffs have filed such an affidavit. *See* Gideon Aff. (filed Oct. 3, 2025). Plaintiffs assert that they cannot yet present facts essential to justify their opposition to summary judgment because "critical discovery" remains outstanding, that is, the proposed depositions of Kenan and several of its corporate officials. The proposed topics for these depositions appear to go to the core issues involved in the pending summary judgment motion, including Kenan's knowledge of DVIR compliance, malice, and corporate culpability. This alone provides a sufficient basis to defer a ruling on summary judgment pending these depositions.

Defendants, however, seek protective orders to prevent the depositions of six Kenan/ KAG corporate officials and to limit the Rule 30(b)(6) corporate deposition of Kenan. As to the former, they contend that the proposed deponents and topics have no connection to the issues in controversy because Kenan's internal issues regarding maintenance are irrelevant to NG's maintenance of its own CNG-powered trucks and trailers, that the deponents have no personal knowledge of maintenance of the truck in question by NG or the driver's actions, and that the depositions would present an undue burden because extensive discovery has already occurred and some witnesses are either no longer employed by Kenan/KAG or retired. As to the latter, Defendants contend that the first six topics are irrelevant, immaterial, not proportional, and unduly burdensome.

The problem with Defendants' arguments is that the evidence of the Kenan Defendants' knowledge of DVIR noncompliance appears to supply a causal connection to the crash here. The only way NG Advantage would have known of the prior brake malfunctions on the truck in question is if Kenan's drivers had properly submitted forms for those brake events. Plaintiffs' theory is that the Kenan Defendants knew that its drivers were not routinely filing DVIRs for maintenance issues as a result of longstanding failure by Kenan to address such issues, and that Kenan failed to do anything to address the DVIR noncompliance. That would implicate Kenan's overall corporate safety culture and knowledge of such noncompliance. Thus, the proposed depositions are both relevant and proportional. Moreover, when asked at oral argument, Defendant offered no specific reason why these depositions would pose an undue burden.[2]

Turning to the summary judgment motion, Defendants' primary argument is that, even if Plaintiffs find everything they hope to find by conducting these depositions, they cannot prove malice sufficient to support punitive damages as a matter of law. In Vermont, punitive damages require "outrageously reprehensible" conduct accompanied by "malice." *Fly Fish Vermont, Inc. v. Chapin Hill Estates, Inc.*, 2010 VT 33, ¶ 18, 187 Vt. 541. "Outrageously reprehensible" conduct means "wrongdoing" that "has the character of outrage frequently associated with crime." *Id.* "Malice" is "defined variously as bad motive, ill will, personal spite or hatred, reckless disregard, and the like." *Id.* "Generally, when punitive damages are sought against a corporate entity, the malicious or unlawful act relied upon must be that of the governing officers of the corporation or one lawfully exercising their authority." *Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 2015 VT 60, 199 Vt. 313 (quotation omitted). Mere

---

[2] At oral argument, Plaintiffs indicated that the proposed Rule 30(b)(6) deposition topic related to "OSHA investigations and findings" can likely be limited. The Court expects the parties to cooperate accordingly in that regard.

"inaction or inattention of senior corporate officers" does not "constitute[] malice sufficient to establish punitive damages liability." *Brueckner v. Norwich Univ.*, 169 Vt. 118, 130-31, 730 A.2d 1086, 1096 (1999).

Specifically, Defendants rely on the Supreme Court's statement that "[t]o sanction punitive damages solely upon the basis of conduct characterized as 'heedless disregard of the consequences' would be to allow virtually limitless imposition of punitive damages." *Id.* at 132, 730 A.2d at 1097 (quoting *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985)). They argue Plaintiffs lack the requisite level of malice or bad motive to support awarding punitive damages for reckless conduct. But the Supreme Court has continued to reference "reckless disregard" as an example of malice in later cases. *See, e.g.*, *Beaudoin v. Feldman*, 2018 VT 83, ¶ 18, 208 Vt. 169 (stating that malice is defined as "reckless disregard," among other things (quoting *Fly Fish Vermont*, 2010 VT 33, ¶ 18)). Indeed, in *Fly Fish*, the Court attempted to clarify when "reckless or wanton misconduct" rises to the level of malice required for punitive damages. *Fly Fish Vermont*, 2010 VT 33, ¶¶ 24-25 (concluding that "the conscious disregard of a known and sufficiently serious risk of harm is the equal of malice").

Defendants further contend, based on that clarification in *Fly Fish*, that malice must be directed at a specific person. *See Fly Fish Vermont*, 2010 VT 33, ¶ 25 ("[W]e hold that the culpability necessary for an award of punitive damages based on reckless or wanton misconduct requires evidence that the defendant acted, or failed to act, in conscious and deliberate disregard of a known, substantial and intolerable risk of harm *to the plaintiff*, with the knowledge that the acts or omissions were substantially certain to result in the threatened harm." (emphasis added)). Defendants misread *Fly Fish*. The reference to "the plaintiff" surely was not intended to limit punitive damages to cases where the risk of harm was directed toward one specific individual or a few specific individuals. "Although malice is perhaps most often found when the defendant's tortious conduct is motivated by ill will toward the plaintiff, it may also be found when the defendant engages in deliberate and outrageous conduct that is not necessarily motivated by ill will toward any particular person." *DeYoung v. Ruggiero*, 2009 VT 9, ¶ 26, 185 Vt. 267 (quotation omitted). Taking Defendants' argument to its logical conclusion would remove whole categories of factual scenarios from eligibility for punitive damages, such as product liability cases where a company places a known dangerous product into the stream of commerce with reckless disregard of the risk that it could harm anyone who uses that product. *See, e.g.*, *Drake v. Allergan, Inc.*, 111 F. Supp. 3d 562, 578 (D. Vt. 2015) (concluding that malice could be inferred where evidence reasonably suggested that defendant knowingly promoted risky doses of injectable drug and was motivated by financial gain); *DeYoung*, 2009 VT 9, ¶ 29 (suggesting punitive damages could "be available against companies that . . . knowingly placed dangerous products into the market, hoping that people would not get hurt, but willing to ignore a great risk of harm to increase profits"); *see also Grimshaw v. Ford Motor Co.*, 174 Cal. Rptr. 348 (Ct. App. 1981) (for purposes of punitive damages, "term 'malice' . . . has been interpreted as including a conscious disregard of the probability that the actor's conduct will result in injury to others." (emphasis omitted)).

While not binding, Judge Sessions' decision in *Drake* is persuasive. There, a jury found that the manufacturer of an injectable prescription drug, through its promotional activities, negligently caused a child to develop a seizure disorder after the drug was injected into his

calves. The court upheld the jury's punitive damages award, concluding: "Evidence presented by the Plaintiffs reasonably suggested that Allergan was motived by financial gain and knowingly encouraged risky doses despite the real possibility that children could be injured because the toxin is more likely to spread above 8 u/kg. The facts here appear to present a case in which malice can be inferred." *Drake*, 111 F. Supp. 3d at 578; *see also DeYoung*, 2009 VT 9, ¶ 27 (holding that "malice may arise from deliberate and outrageous conduct aimed at securing financial gain or some other advantage at another's expense, even if the motivation underlying the outrageous conduct is to benefit oneself rather than harm another").[3] That fact pattern tracks Plaintiffs' theory in the present case. Through deposing Defendants' corporate officials, Plaintiffs could very well discover evidence of corporate knowledge of DVIR noncompliance and the serious risk of harm that posed to other drivers and their passengers, as well as a corporate intent to defer needed maintenance to maximize financial gain. Plaintiffs' theory of the case could support punitive damages if proven. Therefore, the Court cannot foreclose punitive damages here without allowing Plaintiffs the additional discovery they request.

## Order

For the foregoing reasons, Plaintiff's Motion to Deny or Defer Ruling on Defendants' Motion for Summary Judgment (Mot. # 28) is GRANTED. Defendants' Motions for Protective Orders (Mots. # 20 and 26) are DENIED. NG Advantage's Motion for (Partial) Summary Judgment (Mot. # 18) is MOOT.

The Court will defer ruling on the pending summary judgment motion (Mot. # 19) until discovery is complete. The parties shall inform the Court when discovery is concluded and when the summary judgment motion is ripe for determination, including the schedule for submitting any additional briefing that may be necessary.

Electronically signed on December 4, 2025 at 2:34 PM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

---

[3] Defendants' attempt to limit the discussion of malice in *DeYoung* to intentional conduct is unavailing. While it is true that the *Fly Fish* Court noted that "no reckless disregard analysis was necessary to find malice in *DeYoung*," this was in the context of discussing whether a defendant's willful "violation of law in reckless disregard of a plaintiff's rights" is sufficient to support punitive damages. *Fly Fish Vermont*, 2010 VT 33, ¶ 29; *see also id*. ¶ 28 (explaining the fact that "defendants were in wilful [sic] violation of their permit or indifferent to plaintiffs' rights, or both, is not determinative of malice"). Thus, the *DeYoung* Court's holding that malice may be inferred from "deliberate and outrageous conduct" that is aimed at increasing profits despite the known risk of potential harm to others remains sound. *DeYoung*, 2009 VT 9, ¶¶ 27-29; *see also Fly Fish Vermont*, 2010 VT 33, ¶ 22.